**Dionysius RICHERSON, Albert E. Flournoy, Thaddeus Dais, Eugene Fleming, Jr., and Edward Hunt, Individually and on behalf of others similarly situated,**

v.

**Captain Gerald R. JONES, United States Navy, Commanding Officer, Philadelphia Naval Shipyard.**

**Appeal of Thaddeus DAIS.**

**No. 76–1384.**

United States Court of Appeals, Third Circuit.

Argued Nov. 29, 1977.

Decided Feb. 17, 1978.

Van Dusen, Circuit Judge, filed concurring statement.

from a district court order granting the defendant's motion for summary judgment. The appellant had intervened as a party plaintiff in an action claiming that the supervisors of the Philadelphia Naval Shipyard had been engaging in discriminatory practices against their black employees. The court granted summary judgment against Dais on the ground that, at the time Dais intervened, he had neither waited more than 180 days after filing a complaint with the Equal Employment Opportunity Commission nor received an adverse decision from that commission. The court concluded that since Dais had not exhausted his administrative remedies prior to intervening in the federal civil action, the court lacked jurisdiction under 42 U.S.C. § 2000e–16(c). We agree with the appellant that the district court erred in granting summary judgment against him on the ground that he had failed to exhaust his administrative remedies. Consequently, we reverse the district court's order and remand the case for further proceedings.

## I. FACTS

The appellant is a federal employee working as an electrical test mechanic at the Philadelphia Naval Shipyard. On July 21, 1972, pursuant to the applicable regulations for processing equal employment opportunity complaints, Dais filed an administrative complaint with the Shipyard Commander. This complaint alleged discriminatory practices by white supervisors against Dais and other black employees. After being assured by Equal Employment Opportunity officials that the Shipyard Commander would take steps to end the racial discrimination, Dais withdrew his formal discrimination complaint on July 27, 1972, and resubmitted it as an informal letter of action addressed to the Commander. *See* Appendix to Appellant's Brief at 42.[1] The Com-

Stephen A. Sheller, Bruce M. Ludwig, Sheller & Chaikin, Philadelphia, Pa., for Thaddeus Dais.

David W. Marston, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Division, Robert S. Forster, Jr., Asst. U. S. Atty., Alexander Ewing, Jr., Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before GIBBONS and VAN DUSEN, Circuit Judges, and FISHER,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Thaddeus Dais, a black employee of the United States Department of Navy, appeals

---

* Honorable Clarkson S. Fisher, United States District Judge for the District of New Jersey, sitting by designation.

1. A "letter of action" is not a technical term defined by statute or regulation. Rather, it is a term used by the appellant to describe the letter that the Commander suggested he write as a substitute for the formal complaint.

mander then directed Irene Miller, an Equal Employment Opportunity Investigator, to investigate the allegations of Dais's complaint. In the next six to eight months, however, no official decision was made by the Commander. Consequently, in March, 1973, Dais inquired of the Civil Service Commission about the status and findings of Miller's investigation. On March 21, 1973, the Shipyard Commander finally responded to Dais's July 27, 1972 letter. In that response the Commander stated that there was no evidence of racial discrimination in the shop in which Dais worked but that he had found certain administrative practices which required modification. *See* Appendix to Appellant's Brief at 47.[2] The Commander did not provide Dais with a copy of the investigator's report. Dais complained about the Commander's actions in an April 17, 1973 letter to John Warner, the Secretary of the Navy. *Id.* at 52. In addition, a petition signed by many black employees and requesting that the investigator's report be released was presented to the Shipyard Commander. *Id.* at 48.

Dais filed formal discrimination complaints against the Shipyard Commander and other officials on March 30, 1973, and again on May 31, 1973. The March 30, 1973 complaint was investigated by the Equal Employment Opportunity Commission, which rendered a final decision, adverse to Dais, on November 5, 1973. On Dais's appeal, the United States Civil Service Commission affirmed this decision on March 19, 1974. On September 19, 1973, the agency rendered a final decision on the May 31, 1973 complaint, again adverse to Dais. No appeal was taken from that decision to the Civil Service Commission.

On June 13, 1973, Dais intervened as a party plaintiff, both in his individual capacity and as a representative of others similarly situated, in *Richerson v. Jones*, Civ. No.

73–905. On February 5, 1974, the district court conditionally certified that the action should be maintained as a class action. After the defendant moved for reconsideration of that order, however, the court vacated the class certification order and ordered that the case would proceed on the claims of the named plaintiffs in their individual capacities.[3] On September 11, 1974, the defendant filed a motion to dismiss or alternatively for summary judgment against the plaintiffs. The defendant argued that Dais had failed to exhaust his administrative remedies because, at the time Dais intervened, 180 days had not passed from the March 30, 1973 or May 31, 1973 complaints. On April 18, 1975, the district court granted the defendant's motion, holding that since Dais had withdrawn his July 21, 1972 complaint, that complaint could not be regarded as the "initial charge", within the meaning of 42 U.S.C. § 2000e–16(c), for purposes of the 180-day exhaustion period.

Subsequently, the plaintiffs brought motions to reconsider the judgments. On July 16, 1975, the district court vacated that part of its April 18th order granting summary judgment against Dionysius Richerson. However, since in its view all the other plaintiffs had failed to exhaust their administrative remedies, the court denied their motions for reconsideration. On December 18, 1975, the district court ordered that judgment be entered for plaintiff Richerson and against the defendant. Dais filed a notice of appeal with the district court on January 17, 1976.

## II. TIMELINESS OF DAIS'S PRESENT APPEAL

Before we consider the merits of the district court's decision, we must ad-

---

**2.** At that time Captain J. B. Berude was the Shipyard Commander. He has been replaced by Captain Gerald R. Jones, the appellee in the present action.

**3.** This order was based on the district court's conclusion that federal employees have no right to a trial de novo of their discrimination

claims. However, in *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), the Supreme Court held that federal employees are entitled to the same trial de novo as private sector employees. *Accord, Sperling v. United States*, 515 F.2d 465 (3d Cir. 1975).

dress a threshold issue raised by the government—the timeliness of Dais's appeal. Rule 4 of the Federal Rules of Appellate Procedure provides that the notice of appeal from a judgment in a case in which the United States is a party shall be filed within 60 days of the entry of that judgment. The government argues that, for purposes of appeal under 28 U.S.C. § 1291, the summary judgment entered against the appellant on April 18, 1975, was a final appealable order. Since the period between April 18, 1975, and January 17, 1976, the date on which Dais's notice of appeal was filed, clearly exceeded the 60 days allowed by Rule 4, the government argues, this appeal is not timely and, consequently, this court lacks appellate jurisdiction. For the reasons discussed below, we do not find the government's argument persuasive.

The principal error in the government's argument is its failure to recognize that certain post-trial motions toll the 60-day time limit for taking appeal. Rule 4(a) of the Federal Rules of Appellate Procedure provides in part:

> The running of the time for filing a notice of appeal is terminated as to all parties by a timely motion filed in the district court by any party pursuant to the Federal Rules of Civil Procedure hereafter enumerated in this sentence, and the full time for appeal fixed by this subdivision commences to run and is to be computed from the entry of the following orders made upon a timely motion under such rules: . . . (3) granting or denying a motion under Rule 59 to alter or amend the judgment . . . .

In order to toll the time limitation for appeal, a motion must satisfy two conditions. First, that motion must be one of the motions listed in Rule 4(a) of the Federal Rules of Appellate Procedure. Second, it must be timely. *Sonnenblick-Goldman Corp. v. Nowalk*, 420 F.2d 858, 859 (3d Cir. 1970). Both conditions were satisfied here. Dais fashioned his motion below as a motion to reconsider the judgment. We have previously held that, for purposes of Rule 4(a), such a motion qualifies as a Rule 59 motion to alter or amend the judgment. *Id.*; *Gainey v. Brotherhood of Ry. & S. S. Clerks*, 303 F.2d 716, 718 (3d Cir. 1962). In addition, since Dais filed the motion in the district court within 10 days of the entry of the summary judgment against him, the motion was timely under Rule 59(e) of the Federal Rules of Civil Procedure. Thus, the timeliness of the appellant's notice of appeal must be measured by looking not at the original order granting summary judgment against Dais but at the denial of Dais's motion for reconsideration.[4]

In its July 16, 1975 decision, the district court denied the appellant's motion for reconsideration but granted a similar motion in favor of appellant's co-plaintiff Richerson.[5] The effect was that the summary judgment against Dais was allowed to stand while the summary judgment previously granted against Richerson was vacated. When a district court grants a summary judgment against fewer than all the plaintiffs, Rule 54(b) explicitly requires that for such a summary judgment to be immediately appealable, the district judge "must expressly determine that there is no just reason for delay and expressly direct the entry of judgment." *RePass v. Vreeland*, 357 F.2d 801, 804 (3d Cir. 1966). *See Aetna Ins. Co. v. Newton*, 398 F.2d 729, 733 (3d Cir. 1968).[6] It is undisputed that the dis-

---

**4.** The wisdom of this rule is clear. If the rule were otherwise, the 60-day period for appeal would often pass while the district court was assessing the Rule 59 motion and thus the moving party would lose his right of appeal. In the instant case, for example, the period between the initial summary judgment (April 18, 1975) and the decision on the motion for reconsideration (July 16, 1975) exceeded 60 days.

**5.** The motion was also decided adversely to three other plaintiffs.

**6.** Rule 54(b) reads:

> (b) Judgment upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, or when multiple parties are involved, the court may direct the

trict judge performed neither of these steps. Nevertheless, the government argues that the purposes underlying Rule 54 would be served by dismissing this appeal for lack of jurisdiction. The government reasons that the individual plaintiffs' allegations were unrelated to each other and therefore severable for purposes of appeal. But the government's argument misconceives the basic thrust of Rule 54(b). In 1961, when Rule 54(b) was amended to cover the multiple party situation, the framers of the rule were well aware of the conflicts between the judicial unit theory and the expanding rules of joinder. *See* 6 Moore's Federal Practice ¶¶ 54.20–54.30. The 1961 amendment made clear that orders affecting fewer than all the parties would be immediately appealable only if the discretionary conditions enunciated in Rule 54(b) were met. Since these conditions were not met here, the appellant could not appeal from the denial of his motion for reconsideration. Dais could not appeal until the district court had entered a final judgment in Richerson's suit. He filed his notice of appeal on January 17, 1976, within 60 days of the December 18, 1975 final judgment. The notice of appeal was timely.

### III. SUMMARY JUDGMENT BELOW: EXHAUSTION OF ADMINISTRATIVE REMEDIES

In granting summary judgment against the appellant, the district court relied on 42 U.S.C. § 2000e–16(c). Under that statute a federal employee may file a civil action alleging discriminatory practices only if he has first filed a complaint with the governmental agency and the agency has either reached a decision adverse to the employee or not taken action for 180 days since the filing of the charge.

The appellant advances three theories to support his argument that the district court erred in dismissing his complaint for failing to exhaust administrative remedies. First, he contends that since the assurances of the EEOC officials were not made in good faith and were never fully carried out, his resubmission of formal complaints in March and May of 1973 should be treated as a reinstatement of the initial complaint of July 21, 1972. Secondly, the appellant claims that even if the July 21, 1972 complaint is not regarded as the initial charge for purposes of the 180-day exhaustion period, he had fully exhausted his administrative remedies by the time that the district court ruled on the appellee's motion for summary judgment. Finally, Dais argues that since no policies behind the exhaustion rule would be furthered by dismissing his complaint, this court should establish a general exception to the exhaustion requirement.

To support his first theory, the appellant relies primarily on two regulations of the Civil Service Commission—5 C.F.R. §§ 713.-213(a) and 713.217(a). Section 713.213(a) states that an EEO counselor "shall not attempt in any way to restrain the aggrieved person from filing a complaint." Section 713.217(a) states that the agency "shall provide an opportunity for adjustment of the complaint on an informal basis after the complainant has reviewed the investigative file" and "shall furnish the complainant or his representative a copy of the investigative file." In addition, that same regulation specifies that if the agency does not carry out the terms of the adjustment, the agency shall, upon the written request of the complainant, reinstate the complaint for further processing.[7] The appellant argues

entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall

not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

7. 5 C.F.R. § 713.217(a) reads:
(a) The agency shall provide an opportunity for adjustment of the complaint on an informal basis after the complainant has re-

that his withdrawal of his initial complaint on July 27, 1972, was not a unilateral act but instead was encouraged by the shipyard EEO officials, thereby violating § 713.-213(a). He argues next that the Commander failed to adhere to the terms by which Dais had agreed to drop his formal complaint. No changes were made in the employment practices in Dais's department. The Commander did not even respond to Dais's letter until Dais had threatened to file another complainant. Moreover, the shipyard officials repeatedly refused Dais's requests to obtain a copy of the investigative report. Since the shipyard officials did not carry out the terms of the bargain reached when Dais withdrew his July, 1972 complaint, he argues that the initial complaint was reinstated, through the operation of Section 713.217(a), when he filed additional formal complaints in March and May of 1973. Since that initial complaint was filed more than 180 days before the appellant intervened in the district court action, he contends that the requirements of 42 U.S.C. § 2000e–16(c) were fully satisfied.

In response to the appellant's argument, the government contends that Section 713.-217(a) applies only when a formal administrative complaint has been filed and is pending. Since the appellant had withdrawn his July 21, 1972 complaint, the government argues, Section 713.217(a) does not apply. Moreover, the government contends that Section 713.213(a) applies only to *pre*-complaint pressure to discourage the employee from filing a formal administrative complaint and not to *post*-complaint pressure to encourage the complainant to withdraw his complaint.

▉ To resolve this controversy, we turn first to 42 U.S.C. § 2000e–16(c), the statute relied upon the district court. This statute evidences a congressional preference for the informal processes of conciliation and persuasion over formal court proceedings as the means for correcting employment discrimination. A federal employee cannot completely bypass the administrative process and bring his claim initially in the federal courts. *Cf. Ostapowicz v. Johnson*, 541 F.2d 394, 398 (3d Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). At the same time, by allowing federal employees to sue in federal district court 180 days after first presenting their claims to the agency, Congress intended the courts to play a significant role in resolving disputes over alleged discrimination in federal job decisions.

> The 180 day provision represents a Congressional determination that providing prompt access to the courts in discrimination disputes is so important that the administrative process will be given only a finite time to deal alone with a given dispute.

*Grubbs v. Butz*, 169 U.S.App.D.C. 82, 87, 514 F.2d 1323, 1328 (1975). Recognizing the important role of the courts intended by the statute, the Supreme Court unanimously held in *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), that federal employees suing in federal district court have the same right to a trial de novo as do private-sector employees. In addition, although a federal employee must first present his complaint to the EEO officials for conciliation, he need not appeal to the Civil Service Commission and in fact can bypass that adjudicative agency altogether. 42 U.S.C. § 2000e–16(c); *Hackley v. Roudebush*, 171 U.S.App.D.C. 376, 394, 520 F.2d 108, 126 & n. 72 (1975). Similarly, since lay persons initiate the often complex process of resolving employment discrimi-

---

viewed the investigative file. For this purpose, the agency shall furnish the complainant or his representative a copy of the investigative file promptly after receiving it from the investigator, and provide opportunity for the complainant to discuss the investigative file with appropriate officials. If an adjustment of the complaint is arrived at, the terms of the adjustment shall be reduced to writing and made part of the complaint file, with a

copy of terms of the adjustment provided the complainant. If the agency does not carry out, or rescinds, any action specified by the terms of the adjustment for any reason not attributable to acts or conduct of the complaint, the agency shall, upon the complainant's written request, reinstate the complaint for further processing from the point processing ceased under the terms of the adjustment.

nation complaints, the procedural requirements in the Title VII area are neither interpreted too technically nor applied too mechanically. *Love v. Pullman Co.*, 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Hackett v. McGuire Bros.*, 445 F.2d 442 (3d Cir. 1971). Thus, where the employee has not bypassed the administrative process and where the statutory purpose preferring conciliation has been served, the failure to comply perfectly with the procedural requirements of Title VII may not be fatal to the employee's cause of action.

■ Applying these principles to the circumstances of the instant case, we believe that the appellant's argument must prevail. The purpose of § 713.217(a) was to facilitate informal investigation and resolution of the dispute without invoking a more formal process. Adopting the appellant's contention would not frustrate that purpose. The appellant alleges that he was persuaded to withdraw his July 21, 1972 complaint in exchange for promises to initiate an informal investigation and resolution of his charges. Except for the rescission of the complaint, the process anticipated when Dais withdrew his initial charge was no different from the informal process outlined under Section 713.-217(a). The EEO officials were given the opportunity to investigate the complaint and to conciliate the parties. When the results of that investigation did not satisfy Dais, he was entitled under § 713.217(a) to reinstate his formal complaint. His resubmission of formal complaints in March and May of 1973 should certainly suffice as written requests to reinstate that complaint.

The fact that the appellant had withdrawn his original complaint does not alter this analysis. There is no evidence that Dais knew that his withdrawal of his initial complaint would affect his right to bring suit in federal district court. On the contrary, Dais alleges that the EEO officials encouraged him to withdraw that complaint and submit an informal letter to the Commander. The government concedes that such pressure would, if exerted prior to the filing of a complaint, violate § 713.-213(a). While that regulation may not bar

all post-complaint pressure by EEO officials, we believe that the regulation should be read to prohibit such pressure if it is not combined with an explicit warning to the employee about the effects of the withdrawal of his complaint both on the operation of § 713.217(a) and on the 180-day exhaustion period in 42 U.S.C. § 2000e–16(c). Since there is no evidence that the appellant here was so warned, this case falls squarely within the line of decisions relaxing procedural requirements where the government's failure to provide full notice impaired those procedures. *See Allen v. United States*, 542 F.2d 176 (3d Cir. 1976); *Henry v. Schlesinger*, 407 F.Supp. 1179, 1185 (E.D.Pa.1976). Accordingly, we conclude that when Dais resubmitted formal complaints in March and May of 1973, he reinstated his July 21, 1972 complaint for purposes of the 180-day exhaustion period.

■ Even if we were to conclude that Dais's July 21, 1972 complaint had not been reinstated, we would still reverse the district court's decision on the basis of the appellant's second argument. By the time that the district court entered summary judgment against the appellant on April 18, 1975, the Department of the Navy and the United States Civil Service Commission had rendered final decisions on the appellant's March 30 and May 31, 1973 complaints. Thus, the appellant argues that even if he had not exhausted his administrative remedies at the time that he filed his initial complaint in the district court, he had done so at the time of the hearing on the motion for summary judgment.

The government's disagreement with the appellant's second theory rests on two grounds. First, it argues that the failure of appellant's counsel to raise this theory in the district court should preclude his present counsel from raising it here. In *Franki Foundation Co. v. Alger-Rau & Associates, Inc.*, 513 F.2d 581, 586 (3d Cir. 1975), we stated the standard to apply in order to determine whether in a case such as this the appellate court should consider a particular argument:

[T]he rule has evolved that, absent exceptional circumstances, an issue not raised in the district court will not be heard on appeal. But this rule is only a rule of practice and may be relaxed whenever the public interest or justice so warrants.

Under the circumstances here the public interest would not be served by declining to hear this argument. Refusing to consider on appeal an issue or argument not raised below normally promotes the finality of judgments and conserves judicial resources. But those interests can be outweighed in particular cases. This is especially true in the Title VII area, where lay persons initiate the complaint process and where procedural requirements are flexibly administered. Most important, the policy of declining to consider an argument not raised below is strongest where the district judge was not aware of the argument. In the instant case, however, the trial judge acknowledged the existence of the issue but refused to consider it since Dais's counsel had not addressed it. Given his awareness of the possible merits of the argument, the district judge was obliged to consider it. If necessary, he could have requested the parties to file supplemental memoranda. Under these circumstances, we believe that the public interest will be served by our considering the merits of the issue.

The government's second objection to the appellant's contention is a substantive one. It urges that the exhaustion of administrative remedies is a rigid prerequisite to the filing of an action in federal court under 42 U.S.C. § 2000e–16(c). The government relies primarily on *Brown v. General Serv. Admin.*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), where the Supreme Court held that Section 717 of the Civil Rights Act of 1964 provides the exclusive remedy for claims of discrimination in federal employment and that, since the petitioner had failed to file a timely complaint under Section 717(c), the district court had properly dismissed the complaint. In addition, the government argues that allowing a civil suit to proceed before agency action is complete would produce two harmful results. First, if the agency were to find in favor of the employee, valuable judicial resources would have been wasted. Second, agency review of the complaint would be less complete since, by filing suit in federal district court, the employee would already have demonstrated an intent to seek judicial review of the agency's decision.

Again we find the government's argument unpersuasive. In enacting Title VII and the amendments thereto, Congress did not intend to vest administrative agencies with exclusive authority to resolve employment discrimination disputes. Congress did not even intend that the facts found by the agency would be binding in a later federal court action. *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 402 (1976). Rather, the sole purposes of the requirement that the complaints be first presented to the agency were: (1) to provide a more informal, conciliation-oriented forum for resolving the disputes, *see Ostapowicz v. Johnson*, 541 F.2d 394 (3d Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977); and (2) simultaneously to reduce the burden on the federal courts. But where, as here, the agency has had ample time to conciliate the dispute and even the Civil Service Commission has reached a final decision prior to the district court's decision on the summary judgment motion, all the policies behind the exhaustion requirement have been amply served. The administrative agency did have an initial opportunity to resolve the dispute through more informal processes. In addition, since the agency decision occurred prior to summary judgment, the federal court had not yet invested substantial resources in the case. Finally, the government was not prejudiced by Dais's filing of the civil complaint prior to the date on which such filing was technically timely. The government has not even contended that the early filing impaired its ability to prepare an effective defense. *Cf. Hodge v. Hodge*, 507 F.2d 87, 89 (3d Cir. 1975) (premature appeal to court of appeals not dismissed where order was appealable and adverse party was not prejudiced by premature filing of notice of appeal).

Moreover, the government's reliance on *Brown v. General Serv. Admin.*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), is misplaced. In that case the Supreme Court did not address the question whether the petitioner should be relieved from the technical requirements of exhaustion of conciliation remedies. Rather, the question was whether "§ 717 of the Civil Rights Act of 1964, as added by § 11 of the Equal Employment Opportunity Act of 1972 . . . [is] . . . the exclusive individual remedy available to a federal employee complaining of job-related racial discrimination." *Id.* at 824–25, 96 S.Ct. at 1964. The Court held that § 717 was the exclusive remedy and that the petitioner could not proceed under 42 U.S.C. § 1981. Our decision here is entirely consistent with that result. All that we have done here is to construe the scope of the remedy that Congress intended to provide in Section 717.

Because we have accepted the appellant's first two arguments, we find it unnecessary to decide whether we should recognize a general exception to the exhaustion requirement. Nevertheless, we feel obliged to comment briefly on such a proposal. In *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), the Supreme Court held that there are exceptions to a statutory exhaustion requirement. However, we would be reluctant to recognize a general exception in the instant case. Although the district court below had not invested a great deal of resources in the action prior to the agency's decision, we can imagine cases in which far greater resources might be expended. In addition, although there has been no showing here that the agency's review was less than complete, a broad exception to the exhaustion requirement could impair the psychological impetus underlying the administrative process. Thus, by holding here that the district court erred in dismissing the appellant's claim for failing to exhaust administrative conciliation remedies, we do not intend to create a general exception to the exhaustion requirement. Rather, we only hold that under these circumstances, where the employee did not bypass the administrative process, where the process of conciliation was given an opportunity to function, and where the agency in effect misled the employee, the appellant should not be compelled to delay bringing his action in federal court for more than the 180 days during which the conciliation opportunity was available to the agency.

Accordingly, the judgment of the district court will be reversed and the case remanded for proceedings consistent with this opinion.

VAN DUSEN, Circuit Judge, concurring.

I concur in the judgment of the court and in the opinion in all respects except that portion in section III which addresses the appellant's "second argument" that he had fully exhausted his administrative remedies by the time that the district court ruled on the appellee's motion for summary judgment (pages 12–15 of the majority opinion). I believe the unnecessary construction of the exhaustion requirement of § 717(c) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16(c), contained in this dictum should be deferred until such construction is necessary for the decision in a case.