Roland C. WEBB et al.

v.

WESTINGHOUSE ELECTRIC
CORPORATION et al.

Civ. A. No. 76–172.

United States District Court,
E. D. Pennsylvania.

July 14, 1978.

Philip Stephen Fuoco, Herbert B. Newberg, Philadelphia, Pa., for plaintiffs.

Benson Zion, Bryn Mawr, Pa., Albert C. Shapira, Pittsburgh, Pa., for Westinghouse Salary Employees Assoc.

Robert S. Forster, Jr., Asst. U. S. Atty., Robert M. Landis, Philadelphia, Pa., for Westinghouse, R. E. Kirby, E. S. Cattabram, W. Wilson & I. A. Retterer.

Harry Lore, Philadelphia, Pa., Robert Z. Lewis, New York City, for Local 107.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiffs filed this class action [1] against their employer, Westinghouse Electric Corporation and their local union, Local 107 of the United Electrical Radio and Machine Workers of America (Local 107, Union). Plaintiffs allege that the defendants' conduct has violated 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Local 107 has moved to dismiss plaintiffs' Title VII claim for failure to comply with the filing requirements of 42 U.S.C. § 2000e-5. For the reasons stated below, we will deny the motion.

When this action was filed originally, only one of the four named plaintiffs, Mr. Beasley, had joined Local 107 in a charge before the Equal Employment Opportunity Commission (EEOC). Local 107 contended that Beasley's filing with the EEOC did not satisfy the procedural requirements of Title VII since he failed to commence suit within 90 days of receiving notice of the termination of the administrative process and since his initial complaint was filed late with the EEOC. We held the defendants' motion under advisement until we ruled upon plaintiffs' class action motion.

Before the plaintiffs responded to the motion to dismiss, the three remaining named plaintiffs, Messrs. Jackson, Webb and Miller, filed charges with the EEOC alleging that "a climate of racial discrimination [existed] at Westinghouse that affects all employment opportunities." Local 107 was named as a respondent in those charges. Subsequently, Mr. Jackson received his notice of right to sue letter. Before we ruled upon plaintiffs' motion for class designation, plaintiffs' counsel filed that letter as a supplement to the complaint pursuant to Fed.R.Civ.P. 15(d). Local 107

did not oppose the supplementary filing. We conclude that the filing of that notice of right to sue letter cured any jurisdictional defect which may have supported defendants' motion initially.

■ It is well settled that jurisdiction in a Title VII suit is dependent upon the plaintiffs' filing appropriate charges with the EEOC and receipt of a right to sue letter. *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976), *cert. denied* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). Exhaustion of these jurisdictional prerequisites assures that the charged party has notice and the EEOC has an opportunity to conciliate the dispute informally. *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 963 (3d Cir. 1978); *Glus v. G. C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977); *Presseisen v. Swarthmore College*, 71 F.R.D. 34, 41 (E.D. Pa.1976). Therefore, the court usually has no jurisdiction over defendants who were not named in the EEOC charges. *Glus v. G. C. Murphy Co.*, *supra* at 888; *Flesch v. Eastern Pennsylvania Psychiatric Institute*, 434 F.Supp. 963, 970 (E.D.Pa.1977); *Presseisen v. Swarthmore College*, *supra* at 40–41.

■ On the other hand, "the jurisdictional requirements for bringing suit under Title VII should be liberally construed." *Glus v. G. C. Murphy Co.*, *supra* at 887–88. "[T]he procedures of Title VII were [not] intended to serve as a stumbling block to the accomplishment of the statutory objective." *Evans v. Sheraton Park Hotel*, 164 U.S.App.D.C. 86, 92, 503 F.2d 177, 183 (1974). Accordingly, a number of courts have held that "the later issuance of the 'right to sue letter' coupled with the filing of the supplemental complaint operated to cure any initial jurisdictional defect." *Berg v. Richmond Unified School District*, 528

---

1. On January 31, 1978, we approved the following class for this action:

   1. All black persons who have been employed as production and maintenance workers at any time since January 20, 1970 at the Lester, Pennsylvania facility of the Steam Turbine Division of Westinghouse.

2. All black persons who have applied since January 20, 1970 or will apply in the future for employment as production or maintenance workers at the Lester, Pennsylvania facility of the Steam Turbine Division of Westinghouse.

   *Webb v. Westinghouse*, 78 F.R.D. 645 at 648 (E.D. Pa., 1978).

F.2d 1208, 1212 (9th Cir. 1975), vacated and remanded on other grounds, 434 U.S. 158, 98 S.Ct. 623, 54 L.Ed.2d 375 (1977); *see Henderson v. Eastern Freight Ways, Inc.,* 460 F.2d 258, 260 and cases cited in n. 2 (4th Cir. 1972), *cert. denied,* 410 U.S. 912, 93 S.Ct. 976, 35 L.Ed.2d 275 (1973); *Jones v. United Gas Improvement Corp.,* 383 F.Supp. 420, 424–25 (E.D.Pa.1974).

██ It may be argued that the *Berg* case is distinguishable from the case at hand since it involved charges that had been filed with the EEOC prior to the commencement of the federal court action. However, any impact of this distinction is counter-balanced by several factors in our case which illustrate that the policies requiring exhaustion of remedies have been served and no judicial resources have been wasted by waiting for plaintiffs' tardy filing.

First, even if the Title VII claim had been dismissed against Local 107, a Title VII theory would have remained in the case since the employer was also charged under that theory. Since any claims against Local 107 relate closely to those asserted against the employer, the policies of judicial economy and availability of full relief to plaintiffs, should they prevail, weigh heavily against granting defendants' motion and forcing plaintiffs to commence another suit.

Second, it should be noted that plaintiffs' complaint included a claim against the Union under 42 U.S.C. § 1981. This claim provided subject matter jurisdiction with respect to Local 107 and served to retain Local 107 as a defendant in this suit even if plaintiffs had not subsequently exhausted their Title VII administrative remedies against the Local. We can see no prejudice to the defendant by denying its motion to dismiss in these circumstances.

Finally, plaintiffs cured the jurisdictional defect while we considered the motion for class designation. By the time we had ruled upon plaintiffs' motion, the supplement to the complaint had been filed. Thus, "the aggrieved person [has not been] permitted to bypass the administrative process." *Ostapowicz v. Johnson Bronze Co., supra* at 398. In this manner the EEOC policies of notice and conciliation have been fulfilled without impeding the progress of the case.

Therefore, while the course followed by the plaintiffs is not to be encouraged, requiring plaintiffs to institute a new action at this juncture "would be a pointless exercise in formalism." *Berg v. Richmond Unified School District, supra* at 1212.

Our conclusion is bolstered by the Third Circuit's recent discussion of Title VII filing limitations in *Richerson v. Jones,* 572 F.2d 89 (3d Cir. 1978). The *Richerson* court emphasized the pragmatic elasticity of Title VII's exhaustion requirement by focusing on the policies underlying the imposition of the requirement.[2] *Id.* at 97; *see Hicks v.*

---

2. This holding with respect to the timeliness of plaintiff's exhaustion of the administrative process is best classified as an alternative holding. As noted above, the requisite 180-day period had not passed between the filing of the administrative complaints on March 30, 1973 and May 31, 1973, and plaintiff's intervention as a party plaintiff in the ongoing district court action on June 13, 1973. Plaintiff, however, had also filed an earlier administrative complaint on July 21, 1972. "After being assured by Equal Employment Opportunity officials that the Shipyard Commander would take steps to end the racial discrimination [alleged in the July 21, 1972 complaint], Dais withdrew his formal discrimination complaint on July 27, 1972, and resubmitted it as an informal letter of action addressed to the Commander." *Id.* at 91.

An analysis focusing on a reinstatement of this first complaint formed the basis for the court's initial finding that the exhaustion requirement had been fulfilled.

The court determined that the Civil Service Commission regulations required that the March 30, 1973 and May 31, 1973 complaints be construed as requests to reinstate the July 21, 1972 complaint. *Id.* at 96. Therefore, the 180-day period began to run on July 21, 1972.

The court reasoned that a plaintiff should be permitted to reinstate his complaint which had been withdrawn at the urging of EEOC officials who had failed to warn plaintiff of the impact that withdrawal would have upon his rights described in the statute and regulations. *Id.* The court concluded that the later administrative complaints served to reinstate the July 21, 1972 complaint for purposes of the 180-day exhaustion requirement. *Id.* The Third Circuit went on to say, however, that, even if the earlier complaint had not been reinstated, then the plaintiff's failure to exhaust in a timely fashion would be excused for the reasons stated in the text of this opinion. *Id.*

*ABT Assoc., Inc., supra* at 965–67 (same principle for scope of violation charged in EEOC complaint); *Glus v. G. C. Murphy Co., supra* at 885–89 (same principle for identity of parties charged in EEOC complaint). *Cf. Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 192–93 (3d Cir. 1977) (180-day requirement for filing ADEA action is subject to tolling and estoppel). In *Richerson,* plaintiff Dais had filed complaints with the Equal Employment Opportunity Commission on March 30 and May 31, 1973. Before the complaints had been ruled upon, Dais intervened in the pending *Richerson* suit on June 13, 1973. Subsequently in September and November, 1973, the agency found against Dais on both of his complaints. The decision on the March 30, 1973 complaint was affirmed by the United States Civil Service Commission on March 19, 1974, but no appeal was taken from the decision on the May 31, 1973 complaint. On September 11, 1974, the defendant filed a motion to dismiss or alternatively for summary judgment arguing that Dais had failed "to exhaust his administrative remedies because, at the time Dais intervened, 180 days had not passed from the March 30, 1973 or May 31, 1973 complaints." 572 F.2d at 92. The district court granted the defendant's motion, but the court of appeals reversed.

The Third Circuit commenced its analysis by noting that by the time the district court granted defendant's motion, final administrative decisions had been rendered on the March 30, 1973 and May 31, 1973 complaints. In addressing the defendant's argument that "the exhaustion of administrative remedies is a rigid prerequisite to the filing of an action in federal court" in these circumstances, the court focused upon the policies supporting initial agency review of Title VII complaints. The court stated:

> In enacting Title VII and the amendments thereto, Congress did not intend to vest administrative agencies with exclusive authority to resolve employment discrimination disputes. Congress did not even intend that the facts found by the agency would be binding in a later federal court action. . . . Rather, the sole purposes of the requirement that the complaints be first presented to the agency were: (1) to provide a more informal, conciliation-oriented forum for resolving the disputes . . . and (2) simultaneously to reduce the burden of the federal courts.

*Id.* at 97. The court concluded that both these policies had been served where the administrative process was given an opportunity to run its normal course prior to the court's ruling on the summary judgment motion. Since that action occurred prior to the summary judgment ruling, it was clear the district court had not expended "substantial resources on the case." *Id.* Finally, the court noted that the defendant had not suggested that it had been prejudiced in any manner by the late filing.

Although the plaintiffs did not file their agency complaints until following the commencement of this action, the same factors cited in *Richerson* apply with equal weight here. There has been no suggestion that the administrative agency did not have an opportunity to fulfill its function as an "informal, conciliation-oriented forum." *Id.* Furthermore, since the employer remained in the case as a defendant and the plaintiffs also asserted a § 1981 claim against the union, any investment of judicial resources in preliminary rulings, such as the class action motion, would not have been decreased by dismissing the Title VII claim against the Union. Thus, there has been no waste of judicial resources due to plaintiffs' tardy invocation of the administrative process. Finally, Local 107 has not suggested that it has been prejudiced by plaintiffs' delayed exhaustion of the administrative process.

The Third Circuit was careful to define the limits of its holding in *Richerson.* It stated explicitly that the case should not be construed as creating a general exception to the exhaustion requirement. *Id.* at 98. We also believe it is necessary to define precisely the limits of our holding. We wish to

emphasize, therefore, that the following factors all contributed to excusing plaintiffs for their tardy filing in this case: 1. a Title VII theory remained in the case against the employer; 2. Local 107 remained in the case on a § 1981 theory; 3. there is no evidence that the administrative process did not operate in its normal fashion; 4. the tardy exhaustion of the administrative process did not hinder the progress of the case; and 5. no prejudice has been suggested by the union. It is particularly important to note that the administrative procedure here was in fact exhausted. It was simply exhausted late. On these facts, we do not believe that permitting the plaintiff to retain his Title VII claim against Local 107 will "impair the psychological impetus underlying the administrative process." *Id.* Therefore, the motion to dismiss filed on behalf of Local 107 is denied.