**Elizabeth K. CLARK, Plaintiff-Appellant,**

**v.**

**Robert B. CHASEN, Commissioner of the U. S. Customs Service, Defendant-Appellee.**

**No. 78–1979.**

United States Court of Appeals, Ninth Circuit.

May 29, 1980.

Arthur Lazear, Oakland, Cal., argued for plaintiff-appellant; H. Tim Hoffman, Hoffman & Associates, Oakland, Cal., on brief.

Patrick Ramirez S. Bupara, Asst. U. S. Atty., San Francisco, Cal., for defendant-appellee.

Before SNEED and FERGUSON, Circuit Judges, and TEMPLAR,* District Judge.

FERGUSON, Circuit Judge:

Plaintiff Elizabeth Clark appeals from the dismissal of her Title VII [1] complaint for failure to exhaust administrative remedies. We reverse the decision of the district court and remand for trial.

Clark was employed by the United States Customs Service from May, 1959 to October, 1975. On June 3, 1975, she filed a formal complaint [2] with the Service alleging discrimination on the basis of sex because she was denied the assistance and training given to the man who previously held her position. She later experienced emotional difficulties and voluntarily left the Service in October, 1975. She then filed an employment disability compensation claim based on her inability to continue working. [3]

The Customs Service commenced an investigation into Clark's allegations of sex discrimination and informed Clark, by letter dated June 10, 1976, of its tentative determination that her allegations were unsupported. The letter advised her that she could request either a hearing before the Civil Service Commission or a final decision from the Director of Equal Opportunity of the Treasury Department. By letter dated June 21, 1976, she requested a hearing.

Clark was notified by letter, dated July 27, 1976, that a hearing had been scheduled for August 26, 1976, and that she had the right to be accompanied to the hearing by a representative of her choice.

On the day before the hearing, Clark was contacted by a physician appointed to examine her by the Department of Labor, pursuant to her disability claim. The physician recommended that Clark obtain an attorney to represent her in both the Title VII and the disability proceedings.

Just before the commencement of the August 26, 1976 hearing, Clark requested a continuance. [4] The hearing examiner denied her request, and she then refused to participate in the hearing. The examiner remanded Clark's complaint to the Treasury Department. On September 17, 1976, over fifteen months after she filed her formal complaint, Clark received notice from the Treasury Department that her complaint

---

* The Honorable George Templar, Senior United States District Judge for the District of Kansas, sitting by designation.

1. 42 U.S.C. § 2000e, et seq. (1964).

2. Clark filed her formal complaint through a National Representative of the American Federation of Government Employees (AFGE). Clark was assisted by AFGE National Representatives throughout the EEO investigation of her complaint and in preparation for the August 26, 1976 hearing.

3. A Federal Employee Compensation psychiatrist characterized Clark's ailment as a work-related disability caused by the tactics of her supervisors. The Customs Service disputed this conclusion and registered its protest with the Department of Labor at not being asked to submit evidence regarding Clark's claim.

4. There is no record of the August 26, 1976 continuance request and the ensuing discussion because the discussion, in its entirety, occurred prior to the commencement of the "hearing". The parties offer differing versions of the reasons given by Clark as warranting a continuance. Because of our disposition, the differences in these versions are irrelevant.

was cancelled for failure to prosecute. Clark was informed that she could appeal the cancellation administratively or begin a civil action in United States District Court. Accordingly, Clark brought this Title VII suit on October 15, 1976. The government filed a motion for summary judgment, arguing that there was no material issue of fact regarding the absence of discrimination. At the hearing set for argument on the summary judgment motion, the district judge, *sua sponte,* dismissed Clark's complaint for failure to exhaust administrative remedies.

Federal employees were brought within the rubric of Title VII of the Civil Rights Act of 1964 by the Equal Employment Opportunity Act (EEOA) of 1972.[5] The EEOA provided procedures for the handling of complaints alleging discrimination in federal employment. Pursuant to the EEOA, Section 717(c) of the Civil Rights Act, 42 U.S.C. § 2000e–16(c),[6] now provides that a federal employee may file a civil action in United States District Court within 30 days after receiving notice of final action by either the employing agency or by the Civil Service Commission (CSC) on appeal from the employing agency. In addition, the employee may file a civil action after 180 days from the filing of the complaint with the agency, or with the CSC on appeal, if no final action has been taken and the employ-ee is aggrieved by the failure to take final action.

The legislative history of the EEOA, recounted at length in *Hackley v. Roudebush,* 520 F.2d 108 (D.C.Cir.1975), makes clear that Congress was deeply concerned with the "Government's abysmal record in minority employment" and the "rooting out of every vestige of employment discrimination within the federal government." *Id.* at 124, 136. *See also, Sperling v. United States,* 515 F.2d 465, 470 (3d Cir. 1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976). Congress was also concerned with the appearance of fairness and equality in federal employment, in addition to the actuality of equal opportunity. *Hackley v. Roudebush, supra,* 520 F.2d at 136. In light of these purposes, courts should construe the Title VII provisions liberally. *Sias v. City Demonstration Agency,* 588 F.2d 692, 695 (9th Cir. 1978).[7]

The legislative history also highlights Congress's discontent with agency procedures for handling complaints of employment discrimination in the federal government. Each agency had been, and continues to be,[8] almost entirely responsible for investigating itself. Even though hearing examiners are appointed from outside the agency, their responsibility is limited to making recommendations to the head of the agency, who makes the final agency deter-

---

5. Pub.L. 92–261, 86 Stat. 103 *et seq.* (1972).

6. Section 717(c) in its entirety provides:

   Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if ag-grieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

7. *Accord, Hackley v. Roudebush, supra,* 520 F.2d at 122 n.53: ". . . a broad interpretation of § 717 is particularly appropriate in light of the remedial character of the 1974 amendments and the constitutional overtones of the rights protected through Title VII."

8. Current agency procedures are not significantly different from these. *Compare* 5 C.F.R. § 713.201 *et seq.* (1972) with 29 C.F.R. § 1613.-201 *et seq.* (1979).

mination. *Hackley v. Roudebush, supra,* 520 F.2d at 127–28 n.77, 137. In short, the "whole federal complaint process was considered to create a 'built-in conflict-of-interest.'" *Id.* at 137.

In *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), the Supreme Court stated that the legislative history of the EEOA was dominated by two themes:

> The first was the inadequacy of the individually instituted and maintained trial *de novo* as an enforcement technique in the private sector under the Civil Rights Act of 1964. The second was federal employees' lack of adequate internal safeguards against employment discrimination and Congress' perception of their lack of access to the courts to raise claims of job discrimination.

*Id.* at 848–49, 96 S.Ct. at 1954 (footnotes omitted). The Court held that the civil action provided for in § 717(c) of the Civil Rights Act was clearly intended by Congress to be a trial *de novo.*[9] The Court thereby rejected the notion that *de novo* review was only mandated where the trial judge determined that such review was "appropriate."[10] *Id.* at 861, 96 S.Ct. at 1959.

Congress perceived *de novo* review in a United States District Court as essential to its program for eradicating employment discrimination. Courts, therefore, should not hinder the prospect of *de novo* review by burdening employees with exhaustion requirements beyond those prerequisites set out in the statute.

The Supreme Court has expressly held that, as regards private employers, no prerequisites to suit are to be added to those set out by Congress in the Civil Rights Act.[11] In *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Court held that the absence of an Equal Employment Opportunity Commission finding of reasonable cause did not bar suit under the provision analogous to § 717(c)[12] on a claim of racial discrimination brought by a private-sector employee:

> Respondent satisfied the jurisdictional prerequisites to federal action (i) by filing timely charges of employment discrimination with the Commission and (ii) by receiving and acting upon the Commission's statutory notice of the right to sue, 42 U.S.C. §§ 2000e–5(a) and 2000e–5(e). The Act does not restrict a complainant's right to sue to those charges as to which the Commission has made findings of rea-

9. The Court reasoned:

It [Congress] faced a choice between record review of agency action based on traditional appellate standards and trial *de novo* of Title VII claims. The Senate committee selected trial *de novo* as the proper means for resolving the claims of federal employees. The Senate broadened the category of claims entitled to trial *de novo* to include those of private-sector employees, and the Senate's decision to treat private- and federal-sector employees alike in this respect was ratified by the Congress as a whole.

*Id.* at 861, 96 S.Ct. at 1960.

10. *Cf. Hackley v. Johnson,* 360 F.Supp. 1247, 1252 (D.D.C.1973), *rev'd sub nom. Hackley v. Roudebush, supra; Chandler v. Johnson,* 515 F.2d 251, 255 (9th Cir. 1975), *rev'd sub nom. Chandler v. Roudebush, supra.*

11. Both parties to this action cite *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), and *McGee v. United States,* 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d

47 (1971), in support of their arguments. These two cases concern the necessity of exhausting Selective Service procedures and set out a balancing test for determining the applicability of the exhaustion doctrine to a given case. They are not dispositive of the case before us since the governmental interests protected by the exhaustion requirement (*e. g.,* the interest in the development of a factual record, in the application of agency expertise, of avoiding frequent flouting of the administrative process, *see McKart v. United States, supra,* 395 U.S. at 193–195, 89 S.Ct. at 1662–63) have been subordinated by Congress to the interest in eradicating employment discrimination. We note, however, that those cases create a balancing test and do not utilize an absolutist approach; they evidence the Supreme Court's recognition that the interests of plaintiffs even in non-Title VII cases overshadow those of the government. *Id.* at 197, 89 S.Ct. at 1664.

12. 42 U.S.C. § 2000e–5.

sonable cause, and *we will not engraft on the statute a requirement which may inhibit the review of claims of employment discrimination in the federal courts.*

*Id.* at 798–99, 93 S.Ct. at 1822 (emphasis supplied).[13]

■ We can see no reason for differentiating between federal- and private-sector employees by burdening federal employees with requirements in addition to the statutory prerequisites to suit. Such a result would be contrary to Congress's expressed intent in several ways. Most obviously, any additional jurisdictional prerequisites to suit would impede the "rooting out of every vestige of employment discrimination within federal [employment]," *Hackley v. Roudebush, supra,* 520 F.2d at 136.

In addition, the EEOA provisions for federal employee access to the courts were based, in part, on Congress's concern that, prior to 1972, federal employees did not have realistic access to the courts: "In many [employment discrimination] cases, the employee must overcome a U. S. Government defense of sovereign immunity or *failure to exhaust administrative remedies with no certainty as to the steps required to exhaust such remedies.*" S.Rep. No.415, 92d Cong., 1st Sess. 16 (1971) (emphasis supplied).

Moreover, Congress was concerned with minimizing, not increasing, any disparity in the treatment of federal- and private-sector employees when it passed the EEOA. *See, e. g.,* H.R.Rep.No.238, 92d Cong., 1st Sess. 23 (1971), U.S.Code Cong. & Admin.News 1972, pp. 2137, 2158: ". . . [T]here can exist no justification for anything but a vigorous effort to accord Federal employees the same rights and impartial treatment which the law seeks to afford employees in the private sector."

Finally, Congress mandated the expedition of Title VII suits. 42 U.S.C. § 2000e–5(f)(5) sets out that "[i]t shall be the duty of the [trial] judge . . . to assign the [discrimination] case for hearing at the earliest practicable date and to cause the case to be in every way expedited." Burdening federal employees with additional exhaustion requirements cannot be reconciled with this express Congressional mandate.

The District of Columbia Circuit reached this same conclusion in *Grubbs v. Butz,* 514 F.2d 1323 (D.C.Cir.1975), where it stated:

The 180 day provision represents a Congressional determination that providing prompt access to the courts in discrimination disputes is so important that the administrative process will be given only a finite time to deal alone with a given dispute. Indeed, the Act is in part a response to Congressional realization that "the doctrine of exhaustion of remedies . . . had become [a] barrier to meaningful court review." Requiring a complainant to further pursue administrative remedies after fulfilling all the prerequisites to suit specified by the EEOA and, most importantly, after 180 days have elapsed without final administrative action, would frustrate that response.

*Id.* at 1328 (footnote omitted).[14]

The plaintiff in *Grubbs,* an employee of the Department of Agriculture, asked for or consented to a hearing three times in the two-year course of the administrative proceeding on her sex discrimination, reduction in rank and reprisal charges. The third time, Grubbs agreed to a hearing even though she had already brought a civil action and although she claimed that the district court had exclusive jurisdiction over her claims. In addition, Grubbs obtained a temporary restraining order preventing the

---

**13.** This court had reached a similar result in *Jefferson v. Peerless Pumps,* 456 F.2d 1359 (9th Cir. 1972).

**14.** Similarly, the court in *Koger v. Ball,* 497 F.2d 702 (4th Cir. 1974), held that the appellant's complaint stated a cause of action over which the district court had jurisdiction since the appellant had a claim of racial discrimination, had waited 180 days from the initial filing, and was aggrieved by the agency's failure to take final action. *Id.* at 706.

Department from holding the scheduled hearing. Certainly, her conduct was more egregious than Clark's. Clark was advised not to proceed with the hearing without an attorney one day before it was to be held and informed the hearing examiner of her intent at the earliest possible moment. But Clark's conduct is as irrelevant to our inquiry as was Grubbs' to the D.C. Circuit; as long as the statutory prerequisites to suit are met, no further exhaustion inquiry can or should be made.

The government relies principally on three cases to support its position that Clark's duty to exhaust administrative remedies required her to do more than fulfill the statutory prerequisites spelled out in § 717(c): *Beale v. Blount,* 461 F.2d 1133 (5th Cir. 1972); *Jordan v. United States,* 522 F.2d 1128 (8th Cir. 1975); and *Allen v. Crosby,* 416 F.Supp. 1092 (E.D.Pa.1976), *aff'd. mem.,* 556 F.2d 564 (3d Cir. 1977).

*Beale v. Blount, supra,* involved a suit under 42 U.S.C. §§ 1981–1988, not 42 U.S.C. § 2000e–16(c). It is distinguishable from the action before us on this basis alone. In addition, Beale never raised his claim of racial discrimination before the administrative agency and, instead, raised it in the first instance in federal court.

Furthermore, the court considered Beale's request for reinstatement with back pay "an action in the nature of a petition for writ of mandamus." *Id.* at 1138. The court stated that the legislative history of the act which enhanced the availability of the mandamus remedy indicates that "Con-gress did not intend to modify the requirement of exhaustion of available administrative remedies in mandamus suits." *Id.* at 1137–38.

In contrast, the legislative history of the EEOA indicates that Congress was not satisfied with agency self-examination, and was concerned that the defense of exhaustion of administrative remedies had become a barrier to court access. *See* H.R.Rep.No. 238, 92d Cong., 1st Sess. 22–26 (1971).

*Jordan v. United States, supra,* is distinguishable as well. The plaintiff in *Jordan* received an adverse proposed disposition and notification that he could proceed, under applicable regulations, through either the Department of the Army appeals system or the CSC, or both.[15] The plaintiff chose to utilize the Army processes, and, in notifying the Army, raised the issue of racial discrimination for the first time. *Id.* at 1129 n.3. He filed a complaint in district court before any further Army processing took place. In *Jordan,* then, there was no final agency decision nor was there a 180-day delay.[16] Jordan failed to satisfy the statutory prerequisites to suit and his complaint was properly dismissed. Jordan failed to cooperate for 180 days, unlike Clark, who cooperated fully for more than the requisite 180 days.

*Allen v. Crosby, supra,* involved a class action alleging racial discrimination at the Aviation Supply Office, an agency of the Navy. The court's findings regarding one of the named plaintiffs, Robinson, are relevant to our discussion. Robinson received

---

**15.** A decision from either the Department of the Army or the CSC, within 180 days, would have constituted a final action and the plaintiff could have then filed an action in district court.

**16.** Since the plaintiff did not raise the issue of discrimination until he appealed the proposed disposition to the Department of the Army, the 180-day period did not start to run until then. 42 U.S.C. § 2000e–16(c) states that the 30-day and 180-day prerequisite periods apply from the filing of the complaint of *discrimination.* The 180-day time period did not begin to run in *Jordan* until March, 1973, when the discrimination complaint was first made. *See, e. g.,*

*Brown v. G.S.A.,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976):

Section 717(c) permits an aggrieved employee to file a civil action in a federal district court to *review his claim of employment discrimination.* Attached to that right, however, are certain preconditions. Initially, the complainant must seek relief in the agency that has allegedly discriminated against him. . . . [T]he complainant may file a civil action if, after 180 days from the *filing of the charge* or the appeal, the agency or Civil Service Commission has not taken final action. (emphasis added).

notice of the proposed denial of his complaint nearly nine months after filing a formal complaint. He requested a hearing. Before the hearing, the Appeals Examiner limited the number of witnesses Robinson would be allowed to present and denied his request for certain documents. These limitations were enforced at the hearing and Robinson and his counsel walked out of the hearing before any evidence was presented. The district court held that, "under the unique circumstances of this case," Robinson had failed to exhaust his administrative remedies and it therefore dismissed him as a named plaintiff.[17] *Id.* at 1097–98. The Court of Appeals affirmed by memorandum.

The *Allen* court failed to discuss the 180-day proviso, the legislative history of the EEOA, or *McDonnell Douglas v. Green, supra.* We note that *Allen* was limited to its facts, but also note our disagreement with its exhaustion requirement. In addition, we point out that the Third Circuit did not cite *Allen* at all, but instead relied on *Grubbs v. Butz, supra,* in deciding *Richerson v. Jones,* 572 F.2d 89 (3d Cir. 1978).

Thaddeus Dais was an intervenor in the *Richerson* suit, which was based on a complaint of racial discrimination. At the time of intervention, Dais has not waited 180 days from the filing of a complaint with the EEOC nor had he received a final decision. The previous year, however, Dais had filed a formal complaint but had withdrawn it after receiving assurances that steps would be taken to end the discrimination complained of. He resubmitted his complaint as an informal letter, but no steps were taken to alleviate the problem, and several months later Dais was informed that no evidence of discrimination had been found. Dais then filed a second formal complaint, but intervened in the *Richerson* suit before 180 days had passed or a final decision had been rendered.

The Third Circuit reversed the district court's grant of summary judgment against the plaintiff, holding that the resubmission of the formal complaint was, essentially, a reinstatement of the earlier complaint for purposes of the 180-day exhaustion period. *Grubbs v. Butz, supra,* 514 F.2d at 1328, was cited as support for the proposition that Congress only intended to grant agencies 180 days in which to deal alone with a given claim. *Richerson v. Jones, supra,* 572 F.2d at 95. The *Richerson* court recognized that "Congress intended the courts to play a significant role in resolving disputes over alleged discrimination in federal job decisions." *Id.*

The government in *Richerson* argued that judicial resources are wasted where the employee is allowed to proceed in court, since the agency might find in favor of the employee if allowed to continue its proceedings. The court rejected this argument, stating:

> In enacting Title VII and the amendments thereto, Congress did not intend to vest administrative agencies with exclu-

---

17. The district court relied on *Brown v. G.S.A., supra,* in concluding that Robinson's failure to proceed with a hearing precluded a suit in district court. In *Brown,* the Supreme Court held that § 717(c) of the Civil Rights Act provides the exclusive remedy for claims of discrimination in federal employment. The Court stressed the "crucial administrative role" each agency was given by Congress in eradicating employment discrimination and noted the "rigorous administrative exhaustion requirements" set out in § 717. *Id.* at 833, 96 S.Ct. at 1968. *Brown,* however, involved a plaintiff who filed suit 42 days after the final agency decision was rendered. The plaintiff, therefore, had failed to satisfy the statutory prerequisite to suit.

In addition, the Court noted that, regardless of the 30-day proviso in § 717(c), an employee may file in 180 days if the agency, or the CSC on appeal, has not taken final action. *Id.* at 832, 96 S.Ct. at 1967. *See also Alexander v. Gardner-Denver,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), in which the Supreme Court held that the private-sector employee's prior submission of his racial discrimination claim did not bar his Title VII suit. The court noted that the jurisdictional prerequisites to suit are spelled out "with precision" in the statute (42 U.S.C. § 2000e–5, see discussion *supra*). *Id.* at 47, 96 S.Ct. at 1019.

sive authority to resolve employment discrimination disputes. Congress did not even intend that the facts found by the agency would be binding in a later federal court action.

*Id.* at 97.

While the *Richerson* court was concerned with Dais's lack of adequate notice of the consequences of withdrawing his first complaint, its reliance on *Grubbs* and its recognition of the 180-day exhaustion provision and of the role of the court in Title VII cases is significant.

█ The *Richerson* court protected Dais by inferring his compliance with the 180-day exhaustion provision. We need not make inferences to protect Clark. She fully cooperated in the administrative proceedings on her complaint for a period far in excess of the requisite 180 days,[18] and she is thereby entitled to a trial *de novo* on the merits of her complaint. We therefore hold that the district court erred in dismissing the plaintiff's complaint for failure to exhaust administrative remedies.

█ We recognize the important role the administrative agencies play in resolving discrimination complaints while also adhering to Congress's limitation on the amount of time in which an agency may deal alone with these complaints. If the agency fails to reach a final decision in 180 days, the record it has compiled [19] (in this case, a record which runs to 591 pages) is not rendered useless, but is admissible as evidence at trial. *Chandler v. Roudebush, supra,* 425 U.S. at 863 n.39, 96 S.Ct. at 1960.

Accordingly, we REVERSE and REMAND for trial *de novo.*

---

18. An agency might properly dismiss a complaint for failure to prosecute if an employee fails to cooperate in the agency proceedings *during* the 180-day period following the filing of his complaint with the agency. The employee could then file an action in district court, which should commence a trial *de novo* on the issue of failure to prosecute. *See Ettinger v. Johnson,* 518 F.2d 648, 652 (3d Cir. 1975). If the court upholds the agency's dismissal, the action should be dismissed for failure to exhaust. If not, the case should be remanded to the agency for further action. If, however, the agency does not dismiss a complaint for failure to prosecute in the face of noncooperation by the employee during the 180-day period, it may petition the court for a stay, for not more than sixty days, pursuant to 42 U.S.C. § 2000e–5(f)(1). These two remedies adequately protect both the agency and the employee.

19. While the administrative agency may exercise jurisdiction concurrently with the district court, only that part of the administrative record completed prior to the filing of the civil action is admissible as evidence in the district court. *See Grubbs v. Butz, supra,* 514 F.2d at 1330–31. Holding otherwise might discourage federal employees from filing in district court after 180 days have passed without final administrative action, since doing so would force them to proceed in two fora simultaneously. *Id.* As the legislative history set out above makes clear, Congress did not intend the imposition of restraints on federal employees beyond those set out in the statute. Similarly, ". . . allowing the District Court to place undue reliance on an administrative record of which a part was compiled subsequent to the filing of the civil action might create an incentive for the trial court to delay its proceedings pending termination of the administrative proceedings." *Id.* at 1331. Congress in no way intended to allow such a delay; instead, it mandated the expedition of cases filed under § 717(c). *See* 42 U.S.C. § 2000e–5(f)(5).