**Mary Ann ALLEN, Administratrix of the Estate of Mary Allen, Deceased, et al., Plaintiffs,**

v.

**Rear Admiral Philip CROSBY et al., Defendants.**

**Civ. A. No. 72–1797.**

United States District Court, E. D. Pennsylvania.

July 14, 1976.

---

John O. J. Shellenberger, 3d, John P. O'Dea, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for plaintiff.

Richard J. Stout, Frank Bove, Asst. U. S. Attys., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Presently before the Court is the defendants' motion to dismiss or for summary judgment. Plaintiffs' complaint is brought under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.,[1] the Civil Rights Act of 1870, 42 U.S.C. § 1981, and the Fifth and Thirteenth Amendments

---

1. The lawsuit is brought under Section 717 of the Civil Rights Act of 1964, as added by Section 11 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16, which amendments permit suit by Federal employees to redress alleged employment discrimination by Federal employers.

to the United States Constitution. The suit is brought to redress the effect of alleged racial discrimination at the Aviation Supply Office (ASO), a United States Navy agency located at 700 Robbins Avenue, Philadelphia, Pennsylvania. For the reasons stated herein, we have determined that we must dismiss the plaintiffs' complaint.

Plaintiffs' complaint alleges that the standards and procedures used by the ASO to determine the employment opportunities of civilian employees adversely affect black civilian employees and have not been shown by the ASO to be productive of, or significantly correlated to, important elements of work behavior which comprise the work performed by the ASO employees. In particular, the plaintiffs contend that the ASO has relied upon the subjective opinions of supervisors to an excessive extent in its promotion policies and that this practice has prevented black employees from reaching the higher graded and supervisory positions. In an Order dated April 27, 1973, Judge Masterson certified this case as a class action on behalf of all black civilians who are now employed, who have been employed, who would have been employed but for racial discrimination and who will be employed by the various Navy agencies located at 700 Robbins Avenue, Philadelphia, Pennsylvania. Although the plaintiffs have sued various defendants who are officers in the United States Navy, they now seek to proceed only against Rear Admiral Philip Crosby, the Commanding Officer of the ASO. Accordingly, the plaintiffs seek to limit their representation to the class of all black civilians who are now employed, who have been employed, who would have been employed but for racial discrimination and who will be employed by the ASO.

■ The defendants have alleged several bases upon which their motion to dismiss or for summary judgment should be granted. Defendants first contend that the plaintiffs are not entitled to a trial de novo on their Title VII claim but that the Court is confined to a review of the administrative record of a Federal employee's Title VII complaint and can only review that record to ascertain whether the administrative decision is supported by a preponderance of the evidence. However, in *Chandler v. Roudebush,* —— U.S. ——, 96 S.Ct. 1949, 48 L.Ed.2d 416, 44 U.S.L.W. 4709 (1976), the United States Supreme Court held that a Federal employee aggrieved by the final agency disposition of his discrimination claim is entitled to a trial de novo before a United States District Court on his Title VII claim.[2] Therefore, if the plaintiffs have exhausted their administrative remedies, they are entitled to a trial de novo in this Court. *Ettinger v. Johnson,* 518 F.2d 648 (3d Cir. 1975).

Defendants also contend that the plaintiffs in this case are not entitled to sue under § 717(c) of the Equal Employment Opportunity Act, 42 U.S.C. § 2000e–16(c), because the discrimination complained of by the plaintiffs took place prior to March 24, 1972, the effective date of the Act's 1972 amendments. This issue was settled by our Third Circuit in *Sperling v. United States,* 515 F.2d 465 (1975). In that case, the Court held that § 717 confers a right to Federal employees to institute a civil suit in all actions where an administrative claim was pending on March 24, 1972. It is clear from the record in this case that plaintiff C. Bernard Robinson had an administrative action pending on March 24, 1972. The status of the complaints of both Mary Allen and Gracie Davis as of March 24, 1972 is unclear from this record. However, because of the disposition we make of the other issues raised in this case in connection with the claims of these two plaintiffs, we need not

---

**2.** Prior to the holding of the United States Supreme Court in *Chandler, supra,* our Third Circuit Court of Appeals held in *Sperling v. United States,* 515 F.2d 465 (1975), that Federal employees are entitled to a trial de novo in the United States District Court unless upon a review of the administrative record there is no genuine issue of material fact as to the employment discrimination alleged and a moving party is entitled to judgment as a matter of law, pursuant to Rule 56 of the Federal Rules of Civil Procedure. We have examined the entire record in this case and find that there exist genuine issues of material fact with respect to the plaintiffs' allegations which cannot be resolved in a motion for summary judgment.

decide whether the 1972 amendments apply to give them a cause of action.

Defendants contend that none of the named plaintiffs have met the prerequisites for filing a civil action in a Title VII Federal employee discrimination case. Defendants argue that since none of the named plaintiffs have complied with the procedural prerequisites, the class action must be dismissed. *Wetzel v. Liberty Mutual Insurance Company,* 508 F.2d 239, 246 (3d Cir. 1975). The operation of Title VII as to claims of Federal employment discrimination is described as follows by the United States Supreme Court in *Brown v. GSA,* —— U.S. ——, ——, 96 S.Ct. 1961, 1966, 48 L.Ed.2d 402, 44 U.S.L.W. 4704, 4706 (1976):

Section 717 of the Civil Rights Act of 1964, as added by § 11 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16, proscribes federal employment discrimination and establishes an administrative and judicial enforcement system. Section 717(a) provides that all personnel actions affecting federal employees and applicants for federal employment "shall be made free from any discrimination based on race, color, religion, sex, or national origin."

\* \* \* \* \* \*

Section 717(c) permits an aggrieved employee to file a civil action in a federal district court to review his claim of employment discrimination. Attached to that right, however, are certain preconditions. Initially, the complainant must seek relief in the agency that has alleged-

ly discriminated against him. He then may seek further administrative review with the Civil Service Commission or, alternatively, he may, within 30 days of receipt of notice of the agency's final decision, file suit in federal district court without appealing to the Civil Service Commission. If he does appeal to the Commission, he may file suit within 30 days of the Commission's final decision. In any event, the complainant may file a civil action if, after 180 days from the filing of the charge or the appeal, the agency or Civil Service Commission has not taken final action. (footnote omitted).[3]

Our Third Circuit has likewise held that Federal employees must exhaust their administrative remedies before they are entitled to file a civil suit in the United States District Court. *Ettinger v. Johnson,* 3 Cir., 518 F.2d 648 (1975). Thus, the statutory preconditions to the filing of a civil action in the United States District Court by a Federal employee are that the claimant first seek relief in the agency that has allegedly discriminated against him and that he file suit in the Federal district court within thirty days of receipt of notice of the agency's final decision, or within thirty days of the final decision of the Civil Service Commission.

The question raised in the defendant's motion is whether any of the named plaintiffs have exhausted their administrative remedies as required by § 717(c) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16(c). Plaintiffs do not contend

---

**3.** § 717(c) of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(c) reads as follows:

Civil action by employee or applicant for employment for redress of grievances; time for bringing of action; head of department, agency, or unit as defendant

(c) Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Execu-

tive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

that either Mary Allen or Gracie Davis have satisfied the preconditions to filing a civil action under Section 717 of Title VII. *Ettinger v. Johnson, supra.* Indeed, the record shows that Mary Allen was informed by a letter dated May 13, 1971 of the final decision of the Department of the Navy that her allegations of racial discrimination were not supported by the record. She did not, however, file suit until almost eighteen months later on September 11, 1972, well in excess of the thirty days mandated by Section 717(c). As to plaintiff Gracie Davis, the record shows that she has not, at this time, sought relief with the Department of the Navy, as required by § 717(c), 42 U.S.C. § 2000e–16(c). *Brown v. GSA, supra.*

■ The facts relating to the complaint of C. Bernard Robinson are more complex. At the time that Mr. Robinson filed his administrative complaint with the Department of the Navy, the procedures for processing an Equal Employment Opportunity Complaint were set forth in a Navy document entitled Joint Instruction 12713.1E (JOINTINST 12713.1E).[4] Under these regulations, a claimant was first required to seek informal resolution of his complaint through consultation with an Equal Employment Opportunity (EEO) counselor.[5] The EEO counselor was required to make all inquiries which he believed necessary and to submit a written report to the head of the activity if an informal resolution was not reached.[6] After a formal written complaint was filed with the head of the activity, an investigatory officer was assigned to

obtain and develop the full information in connection with each of the complaint's allegations in sufficient detail to permit an evaluation of all the relevant issues.[7] After a review of the investigative file, the head of the activity attempted to informally arrive at a satisfactory settlement of the complaint.[8] If an adjustment was not reached, the head of the agency notified the complainant in writing of his proposed disposition of the matter. This notice advised the complainant that if he was dissatisfied with the proposed disposition, he had the right to request a hearing and a decision by the Director of Equal Employment Opportunity (DEEO), or a decision in connection with his complaint by the DEEO without a hearing.[9] If the complainant requested a hearing, the Civil Service Commission was required to appoint an appeals examiner to conduct the hearing.[10] Upon completion of the hearing, the appeals examiner was required to submit the complaint file, including the transcript of the hearing, to the DEEO, who made the final decision in connection with the discrimination complaint on behalf of the Department of the Navy.[11]

In September, 1969, Mr. Robinson volunteered to become an EEO counselor and served in that capacity until April, 1971. In February, 1971, Mr. Robinson applied for a new position at the ASO but was not appointed to the job. On April 12, 1971, Mr. Robinson made a complaint of racial discrimination with the EEO counselor. Informal conciliation failed and on June 8, 1971, Mr. Robinson requested a formal in-

4. On October 21, 1972, after the Equal Employment Opportunity Act of 1972 took effect on March 24, 1972, regulations for processing of administrative complaints of discrimination pursuant to Title VII were promulgated. These regulations are found at 5 C.F.R. § 713.201 *et seq.*, and establish procedures which are identical in all relevant respects to those found in JOINTINST 12713.1E which are required to be followed by Mr. Robinson in processing his administrative complaint of discrimination.

5. JOINTINST 12713.1E § 6a. An EEO counselor is an employee appointed by the head of an activity to seek resolution on an informal basis of matters giving rise to an allegation of discrimination.

6. JOINTINST 12713.1E § 6(a)(1).

7. JOINTINST 12713.1E § 6(b)(1) and § 6(b)(3).

8. JOINTINST 12713.1E § 6(b)(4).

9. JOINTINST 12713.1E § 6(b)(4).(b). The DEEO is an official designated by the Secretary of the Navy to act for him in assuring that the policy of equal opportunities in employment matters is carried out effectively. JOINTINST 12713.1E § 4(e).

10. JOINTINST 12713.1E § 6(b)(4)(e).

11. JOINTINST 12713.1E § 6(b)(4)(g) and § 6(b)(4)(b).

vestigation of his charges of racial discrimination. On November 11, 1971, the investigator filed an initial report, which was followed on January 19, 1972 by a second report, in which the investigator found that there was insufficient evidence to conclusively prove or disprove Mr. Robinson's charge of racial discrimination. On March 6, 1972, Mr. Robinson received the proposed denial of his complaint from the head of the agency. On March 13, 1972, after meeting with the head of the agency, Mr. Robinson requested a hearing before a Civil Service Commission Appeals Examiner. After the appointment of the Appeals Examiner on March 17, 1972, counsel for Mr. Robinson, at the request of the Appeals Examiner, submitted a list of his proposed witnesses. Counsel for Mr. Robinson requested copies of various documents he wished to introduce into evidence at the administrative hearing. The Appeals Examiner limited the number of witnesses which Mr. Robinson would be permitted to call and denied his request for some documents.[12]

On May 12, 1972, the hearing was convened. The Appeals Examiner again denied the request of Mr. Robinson's counsel to present additional witnesses and introduce additional documents. Mr. Robinson and his counsel then decided that they would not proceed with the hearing pursuant to rulings made by the Appeals Examiner and walked out of the hearing without any evidence having been presented. On May 24, 1972, the Appeals Examiner transmitted the abbreviated record of the hearing to the Navy, together with his analysis thereof. Thereafter, in a letter dated August 8, 1972 which was delivered to the plaintiff on August 14, 1972, the plaintiff was advised that the Secretary of the Navy had canceled the complaint of Mr. Robinson for his failure to prosecute.

We hold that, under the unique circumstances of this case, Mr. Robinson has failed to exhaust his administrative remedies prior to the filing of his civil action as required by § 717(c) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16(c). *See Brown v. GSA, supra,* and *Ettinger v. Johnson, supra.* The action of Mr. Robinson and his counsel in deliberately "walking out" of the administrative hearing was a deliberate abandonment of the administrative process. If the Court were to ignore the conduct of Mr. Robinson and his counsel who, when confronted with an adverse ruling by the Appeals Examiner, deliberately left the hearing, the exhaustion of remedies requirement would be rendered meaningless and the balance struck by Congress between administrative and judicial functions in Federal employee employment discrimination cases would be negated. Plaintiffs argue, however, that under the applicable regulations outlined above, Mr. Robinson was not required to request an administrative hearing in order to exhaust his administrative remedies and obtain a final agency decision. While Mr. Robinson could have requested a final decision by the DEEO without a hearing, Mr. Robinson chose to request such a hearing and make the results of his administrative hearing part of the record on which the final agency decision would be based. It is clear from the record in this case that a final agency decision has not been rendered on the merits of Mr. Robinson's claim.

As stated in *Brown v. GSA,* —— U.S. at ——, 96 S.Ct. at 1968, Congress was careful to draft a statute which "provides for a careful blend of administrative and judicial enforcement powers." The Supreme Court in *Brown* pointed out that § 717 of the Act contains "rigorous administrative exhaustion requirements." —— U.S. at ——, 96 S.Ct. 1961. The "crucial administrative role" that the agency is to play would be defeated if the Court would condone the actions of Mr. Robinson in this case. *Brown, supra,* at ——, 96 S.Ct. 1961. Because Mr. Robinson has failed to exhaust his administrative remedies and obtain a final agency decision, we must dismiss him as a named plaintiff in

---

**12.** The current regulations found in 5 C.F.R. § 713.218 provide that the hearing examiner is vested with the same wide discretion in the conduct of the hearing which the appeals examiner exercised in this case.

connection with the Title VII action. It follows therefore that none of the three named plaintiffs have complied with the statutory prerequisites required of a Federal employee for filing a civil action in connection with Title VII.

 Plaintiffs argue that even if their claims under Title VII are dismissed, they still have valid claims under 42 U.S.C. § 1981, as well as the Fifth and Thirteenth Amendments to the United States Constitution, and can obtain relief thereunder for their employment discrimination claims.[13] In the recent Supreme Court case of *Brown v. GSA, supra,* the Court stated that the "unambiguous congressional perception seems to indicate that the congressional intent in 1972 was to create exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination" and held "that § 717 of the Civil Rights Act of 1964, as amended provides the exclusive judicial remedy for claims of discrimination in federal employment." —— U.S. at ——, 96 S.Ct. at 1966. *See also Gissen v. Tackman,* 537 F.2d 784 (3d Cir. 1976). Therefore, the plaintiffs' claims under 42 U.S.C. § 1981, as well as the Fifth and Thirteenth Amendments, will be dismissed.

---

13. 42 U.S.C. § 1981 reads as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The Fifth Amendment to the United States Constitution provides:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

The Thirteenth Amendment to the United States Constitution provides:

Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

Section 2. Congress shall have power to enforce this article by appropriate legislation.