**Brian G. MAHER, Plaintiff,**

v.

**The UNITED STATES POSTAL SERVICE, the United States Postmaster General and Aileen Wynne, Defendants.**

**No. 86 Civ. 1593 (TPG).**

United States District Court, S.D. New York.

Feb. 5, 1990.

---

See also, 863 F.2d 45 (unpublished opinion).

Rhonda Brown, Patterson, Belknap, Webb & Tyler, New York City, for plaintiff.

Paula T. Dow, Asst. U.S. Atty., New York City, for defendants.

## OPINION

GRIESA, District Judge.

Plaintiff Brian Maher brings this action under Title VII of the Civil Rights Act of 1964, alleging sexual discrimination by his former employer, the United States Postal Service. Defendants in this action are the Postal Service, the United States Postmaster General and Maher's former supervisor, Aileen Wynne. Defendants move under Fed.R.Civ.P. 12(b)(1) and (6) to dismiss for lack of subject matter jurisdiction or failure to state a claim upon which relief can be granted. In the alternative, defendants move for summary judgment under Fed.R. Civ.P. 56(b).

The motion of the Postmaster General is denied, and the case will go to trial as to that defendant, except for one claim as later described. The motions of the Postal Service and Wynne are granted, and the case is dismissed as against them.

## FACTS

Maher began working as a letter carrier for the Postal Service on July 2, 1977. He remained at the Nanuet, New York post office until he was terminated on July 18, 1983.

On August 21, 1981 Maher filed an Equal Employment Opportunity complaint with the Postal Service alleging that Wynne harassed him by saying that he was crazy and needed psychiatric treatment. The

Service cancelled that complaint on November 9, 1981 on the ground that it did not come within the purview of EEO regulations. Maher did not challenge this disposition.

On February 2, 1982 Maher and ten other employees made an EEO complaint to the Service, charging that, "In the past year Mrs. Wynne has openly discriminated against the male employees in this office," and, "All Mrs. Wynne's disciplinary actions at present, have been directed toward male not female employees." The record before the court does not show what action, if any, was taken on this complaint.

On February 18, 1982 Wynne denied Maher a pay raise.

On February 22, 1983 Maher and others filed a "Report of Hazard, Unsafe Condition or Practice" with the Postal Service Regional Safety Officer. In essence, the complaint stated that letter carriers were more vulnerable to accidents because Wynne did not give them enough time to make their rounds. Again, the record before the court does not show how this was disposed of.

On April 11, 1983 Maher injured himself while on the job. A doctor prescribed medication and home bed-rest. On May 3 the doctor told Maher that he could return to work in 5 days. Only 2 days later, postal officials observed Maher giving racquetball lessons at a local park. One official ordered him to return to work the following day. Maher did so. He was paid during the period of his absence.

Wynne became postmaster of the Nanuet post office in early June of 1983. On June 16 she issued a Notice of Removal to Maher, discharging him effective July 18, 1983 for "Attempting and Obtaining Continuation of Pay Under False Pretenses" in connection with the April injury and May racquetball incident.

On July 3, 1983 Maher filed an EEO complaint with the Postal Service, alleging that Wynne terminated him in reprisal for his filing the February 2 EEO claim against her. He also claimed that a former Nanuet postmaster, John Mattinson, was involved with Wynne in having Maher terminated, in reprisal for Maher's safety hazard complaint.

On December 23, 1983 the Postal Service issued Maher a Notice of Proposed Disposition of the July 1983 complaint, informing him that the Service had found his allegations to be unsupported by the facts. The notice stated that if he was dissatisfied with the proposal, he could request a final decision from the Service without a hearing or request a hearing by a complaints examiner appointed by the Equal Employment Opportunity Commission ("EEOC"). If such a hearing were held, the examiner would submit his findings to the Postal Service for issuance of its final decision. The notice further advised that if Maher failed to notify the Postal Service of his wishes, the Service might adopt the proposed disposition as its final decision, after which he could either appeal to the EEOC or file a civil action in federal court within 30 days. Finally, the notice advised him that he could file a civil action within 180 days from the date of filing his complaint on July 3, 1983 if no final decision had been issued.

By letter of January 9, 1984, slightly over 180 days after the filing of the complaint, Maher requested a hearing before the EEOC complaints examiner. Maher was notified that a hearing would be held February 19, 1985 and that his claim could be cancelled for failure to prosecute if he did not appear. Maher did not attend the hearing. On February 22, 1985 the examiner recommended that the Postal Service cancel the complaint for failure to prosecute, which was done. On April 30, 1985 the Postal Service notified Maher of this action and advised that he had a right to appeal this disposition to the EEOC.

Maher appealed by letter of May 10, 1985, stating that he did not appear at his hearing because a new job and various personal problems made it impossible for him to find the time. He also stated that he no longer lived at the address furnished to the Postal Service to which notices were sent. As a consequence, he received his mail only when he was able to stop by his old residence and pick it up. However,

Maher did not deny receipt of the notice prior to the scheduled hearing date.

On December 16, 1985 the EEOC affirmed the cancellation for failure to prosecute. The EEOC sent a copy of its decision to Maher along with a "Statement of Appellant's Rights" which advised that the decision was final and that Maher had a right to file a civil action in federal district court within 30 days.

Maher then commenced the present action. He sued *pro se*. The *pro se* clerk's office received Maher's complaint in early January 1986, 23 days after the time of the EEOC decision. However, it was not filed with the Clerk of the Court until some time after the 30–day period expired.

This court ruled that the suit was timely brought but dismissed the case for lack of subject matter jurisdiction, since Maher had failed to name the Postmaster General as a defendant. The judgment was vacated on appeal, and the case was remanded so that Maher could amend his complaint. Maher, no longer proceeding *pro se*, filed an amended complaint, naming the Postal Service, the Postmaster General, and Wynne.

## DISCUSSION

### *Exhaustion of Administrative Remedies*

■ Defendants contend that Maher's suit is barred because of his failure to exhaust administrative remedies, pointing to the fact that he requested a hearing before the EEOC and then failed to attend.

In dealing with this contention, it is necessary to take account of certain provisions of the Equal Employment Opportunity Act of 1972, which extended coverage of Title VII to employees of certain federal agencies, including the Postal Service. A new § 717 was added to Title VII. 42 U.S.C. § 2000e16. Section 717(c) deals with the remedies afforded to a federal employee who is covered by § 717 and who claims discrimination. This section is as follows:

> (c) Within thirty days of receipt of notice of final action taken by a department, agency, or unit [charged with discrimination], or by the Equal Employ-ment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, ... or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action ... in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

The Supreme Court has summarized § 717(c), and has described this provision as imposing "certain preconditions" on the right of an aggrieved federal employee to file a civil action claiming employment discrimination. *Brown v. General Services Administration*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). The Court stated:

> Initially, the complainant must seek relief in the agency that has allegedly discriminated against him. He then may seek further administrative review with the Civil Service Commission or, alternatively, he may, within 30 days of receipt of notice of the agency's final decision, file suit in federal district court without appealing to the Civil Service Commission. If he does appeal to the Commission, he may file suit within 30 days of the Commission's final decision. In any event, the complainant may file a civil action if, after 180 days from the filing of the charge or the appeal, the agency or Civil Service Commission has not taken final action.

Subsequent to this decision, the statute was amended to refer to the Equal Employment Opportunity Commission instead of the Civil Service Commission. Where the preconditions for court action are fulfilled,

the employee can obtain a trial *de novo*. *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976).

The various employing agencies and the EEOC have detailed procedures for dealing with discrimination claims by federal employees. The Postal Service, like other agencies, attempts initially to deal with the matter in a relatively simple fashion without a hearing. If the initial determination is against the employee, a proposed disposition is issued. The employee may request a final decision without a hearing or request a hearing by an EEOC complaints examiner. Following such a hearing, the complaints examiner will submit his findings to the Postal Service for issuance of its final decision. If the employee fails to indicate his wishes at this stage, the Postal Service may adopt the proposed disposition as the agency's final decision. Whenever it is that the Service makes the final decision, if it is against the employee, he may appeal to the Office of Review and Appeals of the EEOC.

In the present case Maher filed his complaint with the Postal Service. After the Service issued a proposed disposition against him, Maher took the option of requesting a hearing by an EEOC complaints examiner. However, he did not attend the hearing. A final decision "on the merits" was never rendered by either the Postal Service or the EEOC, but the complaint was cancelled by the Service for failure to prosecute. The present suit was brought within 30 days after affirmance by the EEOC.

Maher contends that he has fulfilled the statutory conditions for filing a Title VII action under § 717 (hereafter referred to as a "§ 717 action"), because he initially sought relief with the Postal Service and he commenced his suit within 30 days following final agency action. However, defendants contend that this is not enough, and that the suit is barred because Maher did not participate in the hearing granted him —*i.e.*, did not exhaust his administrative remedies.

A number of cases have dealt with the issue of exhaustion of administrative reme-

dies in § 717 actions. Certain courts have spoken in broad terms about the application of the exhaustion doctrine. Other courts have indicated that the exhaustion rule applies, but only in a limited manner. Finally, one decision virtually rejects any use of the exhaustion doctrine in connection with § 717.

The Supreme Court opinion in *Brown v. General Services Administration, supra.*, referred to § 717 as having "rigorous administrative exhaustion requirements and time limitations." *Id.* at 833, 96 S.Ct. at 1968. However, the actual issue dealt with in that case was whether § 717 provides the exclusive judicial remedy for claims of discrimination in federal employment and whether the plaintiff in that case could avoid the requirement of suing within 30 days after final agency action by bringing his suit under 42 U.S.C. § 1981. The Court held that he could not.

Certain lower courts have spoken broadly of the applicability of the exhaustion doctrine in § 717 cases and have dismissed such actions for failure to comply with that rule. *Jordan v. United States*, 522 F.2d 1128, 1132 (8th Cir.1975); *Steele v. Tennessee Valley Authority*, 429 F.Supp. 1051 (N.D.Ala.), *aff'd*, 544 F.2d 516 (5th Cir. 1976); *Johnson v. Bergland*, 614 F.2d 415, 417 (5th Cir.1980); *Allen v. Crosby*, 416 F.Supp. 1092 (E.D.Pa.1976), *aff'd*, 556 F.2d 564 (3d Cir.1977); *Mackay v. U.S. Postal Service*, 607 F.Supp. 271 (E.D.Pa.1985). In *Mackay*, the court stated:

> Exhaustion of administrative relief before resorting to the courts does not require mere initiation of prescribed administrative procedures; they must be pursued to their conclusion. There must be final administrative action or the opportunity for final administrative action.

*Id.* at 276.

Despite the expansive language in these decisions, most of them involved rather narrow rulings on the facts. In *Steele*, *Johnson* and *Mackay* the plaintiffs had filed their administrative complaints but had failed to provide information requested by the employing agencies so that action

could be taken on those complaints.[1] The facts in *Jordan* were involved and need not be described, except to say that dismissal of the court action was based on the failure of the plaintiff to give the agency an opportunity to act on his complaint in an orderly way.

*Allen v. Crosby* involved a more expansive application of the exhaustion doctrine. There one of the plaintiffs, Robinson, had filed his complaint with the agency, had received a proposed denial of his complaint from the agency, and had then appealed. A hearing was scheduled before a Civil Service Commission Appeals Examiner. Robinson submitted a list of proposed witnesses and a request for documents. The Appeals Examiner limited the witnesses and denied the request for documents. Robinson left the hearing before any evidence had been presented and participated no further. The final administrative action was to cancel the complaint for failure to prosecute. In a subsequent § 717(c) action, the district court dismissed the case. The court noted that Robinson could have requested a final administrative decision without a hearing. But once he had requested such a hearing he failed to exhaust his administrative remedies by not participating in the hearing and obtaining a final agency decision on the merits. The cancellation for failure to prosecute was not "final action" within the meaning of § 717(c), and the case could not be entertained. *Id.* at 1097–98.

We now turn to a group of decisions which have refused to dismiss § 717 claims on the basis of failure to exhaust administrative remedies. One of these decisions, *Grubbs v. Butz*, 514 F.2d 1323 (D.C.Cir. 1975), basically held that the exhaustion doctrine does not apply to § 717. There the plaintiff filed a claim with the agency, received notice of a proposed disposition against her, and requested a hearing. After over a year had elapsed, the agency had not scheduled a hearing, and the plaintiff filed a suit. Shortly thereafter, the agency set a hearing date, and the district court

stayed the action pending that hearing, on the theory that plaintiff was required to exhaust her administrative remedies. The court of appeals reversed, relying mainly on the statutory provision giving a federal employee in a § 717 case the right to sue any time after 180 days following the filing of the administrative complaint if final action has not been taken. The court interpreted the legislative history of the 180–day provision as indicating the view of Congress that the doctrine of exhaustion of remedies had become a barrier to meaningful court review of discrimination claims by federal employees. The court stated:

> ... the Act is in part a response to Congressional realization that "the doctrine of exhaustion of remedies ... had become [a] barrier to meaningful court review." Requiring a complainant to further pursue administrative remedies after fulfilling all the prerequisites to suit specified by the EEOA and, most importantly, after 180 days have elapsed without final administrative action, would frustrate that response.

*Id.* at 1328.

The court held that an exhaustion requirement should not be "superimposed" on the conditions specified by the statute, and that, regardless of the availability of any further administrative remedy, a federal employee has a right to file a civil action in court if final agency action has not been taken within the 180–day period. In so holding, the court relied on *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798–99, 93 S.Ct. 1817, 1822–23, 36 L.Ed.2d 668 (1973). This was a Title VII action brought against a private employer rather than against a federal agency under § 717, and it did not deal specifically with the exhaustion doctrine, but with another type of court-created prerequisite to suit not expressly stated in Title VII. However, the Supreme Court spoke generally to the effect that the federal courts should not "engraft" additional requirements onto those preconditions specified in the statute for the bringing of Title VII actions.

1. In each of these cases the agency cancelled the complaint for failure to prosecute. The courts appear to assume that this was "final action" within the meaning of § 717(c).

In *Grubbs* the plaintiff had waited for over a year for a hearing to be scheduled and filed suit while there was still none in sight. However, two later cases addressed the question of whether the exhaustion doctrine should be applied when a hearing is set but the plaintiff does not participate.

In *Clark v. Chasen*, 619 F.2d 1330 (9th Cir.1980), the plaintiff filed a complaint with the agency, which provisionally denied the claim. The plaintiff then requested a hearing, which was scheduled. Shortly before the hearing the plaintiff requested a continuance to obtain counsel. This application was denied and the plaintiff refused to participate in the hearing. The agency cancelled her complaint for failure to prosecute, following which a court action was brought. The district court dismissed the action for failure to exhaust administrative remedies. The court of appeals reversed. The court interpreted the 180–day provision in the statute as imposing a requirement of cooperating with the agency during that period, referring to this part of the statute as "the 180–day exhaustion provision." *Id.* at 1337. Since the plaintiff had cooperated with the agency for a period far in excess of the 180 days, she had fulfilled this requirement. The court did not comment on whether the plaintiff was justified in refusing to proceed with the hearing.

In *McRae v. Librarian of Congress*, 843 F.2d 1494 (D.C.Cir.1988), the plaintiff filed a complaint with the agency and was notified of a provisional decision against her four years later. She then requested a hearing, and one was convened. The plaintiff requested that witnesses be sequestered. The examiner denied the request and the plaintiff refused to go forward. The agency then rendered a final decision against the plaintiff on the merits. In a subsequent lawsuit the district court dismissed the case for failure to exhaust administrative remedies. The court of appeals reversed. The court recited the law as being that, upon "exhaustion of the administrative proceedings" the complainant is entitled to a trial *de novo* in court. *Id.* at 1496. Congress has required "exhaustion before the agency in the first instance," but there can be no "massive procedural roadblock to access to the courts." *Id.* Here the plaintiff cooperated for a lengthy period of time. The agency had enough information to act initially on her complaint. At this point she could have sued, although she had the option of requesting a hearing. The court stated:

> Had McRae chosen to proceed without a hearing, no more would have been required of her. On completion of a full hearing, she would have been entitled to trial de novo in court. As the least favorable action imaginable would not have prejudiced her suit in any way, we see no reason why her good faith refusal to pursue the hearing should now bar her claim.

*Id.* at 1496.

After a review of the statute and the cases, this court arrives at the following conclusions. The doctrine of exhaustion of administrative remedies should not be applied in § 717 cases. The doctrine in its normal sense means what the words connote: *exhaustion* of remedies, or carrying the available remedies to the end. But there is no such requirement in the statute, and the Supreme Court has expressed itself strongly against engrafting court-created conditions upon the rights granted by Congress in Title VII. *McDonnell Douglas Corp. v. Green, supra.* The efforts to superimpose an exhaustion requirement on § 717 actions have led to a certain confusion—some courts laying down the rule in its full scope, another describing a limited "180–day exhaustion" rule, and still another expressing it as a requirement of "exhaustion before the agency in the first instance" conditioned on there being no "massive procedural roadblock" to a court action.

The preferable path, it would seem, is to follow the teaching of *McDonnell Douglas* and simply enforce the statute. This means that the employee, before he can sue, must make his complaint to the agency. If the agency takes final action, he may sue within 30 days thereafter or he may sue if the agency has not finally acted 180 days after the filing of the complaint.

These are the conditions expressly imposed by the statute upon the right to bring a § 717 action. It would also seem proper to recognize that certain duties may arise by necessary implication. For instance, it is not sufficient for the employee simply to go through the form of filing an agency complaint. He must reasonably cooperate with the agency so that it can make its determination.

Mention should be made of the holding in *Allen v. Crosby*, 416 F.Supp. 1092, 1097–98 (E.D.Pa.1976), *aff'd*, 556 F.2d 564 (3d Cir. 1977), that an agency decision cancelling a claim for failure to prosecute is not "final action" within the meaning of § 717(c). This view finds no support in the majority of the decisions. The statute contains no such qualification. It would seem clear that a final decision cancelling a claim for failure to prosecute is "final action" within the meaning of § 717(c).

■ Now it is necessary to determine if there is any basis for dismissing Maher's action because of a failure to comply with any requirements expressly contained in the statute or necessarily implied. We need to return once again to the facts. As already described, Maher filed a complaint with the Postal Service, and there is no contention that he failed to provide necessary information or otherwise cooperate with the Service at this stage. Approximately six months after the filing of the complaint the Service notified Maher of its proposed disposition against him. He had various options, including the filing of a lawsuit, since 180 days had passed since the filing of his complaint and final agency action had not been taken. He chose to request a hearing. The hearing date he was given was for a time 13 months later. He did not attend the hearing. The Postal Service cancelled the complaint for failure to prosecute. Maher attempted, through the means available to him, to rectify the situation. He appealed to the EEOC from the Service's ruling. After approximately 10 months the EEOC affirmed. It was then that Maher filed the present action. This occurred within 30 days following the final agency action.

Maher's one lapse during the entire administrative process was his failure to attend the hearing of February 19, 1985. This was by no means a trivial matter, and it was within the discretion of the Postal Service to cancel his complaint for failure to prosecute. But the question remains as to whether this circumstance is sufficient to cause Maher to forfeit the right to sue. The court holds that it is not.

Maher fulfilled the conditions for bringing a suit specified by Congress. He filed a complaint with the Postal Service and brought suit within 30 days following final action by the Service. With regard to his failure to attend the hearing, it was his option whether to request that hearing at all. In any event, this failure was Maher's one lapse in a 2½ year administrative process, and he subsequently attempted to have the hearing reinstated by way of an administrative appeal.

Congress has expressed a strong policy in favor of allowing federal employees claiming discrimination to seek their remedy in court, particularly after the 180 day period has passed. It would be a violation both of this policy and the terms of the statute to deprive Maher of his § 717 action because he failed to attend an optional hearing.

This is not to say that an employee who treats his administrative options in a frivolous or abusive manner will be allowed to maintain his § 717 action regardless of such conduct. But Maher's case presents no issue of this nature.

*Claims of Reprisal*

■ Defendants argue that Maher's action should be dismissed because reprisal for lodging a safety complaint is not a cognizable claim under Title VII.

Title VII prohibits discrimination against an employee "because he has opposed" his employer's discharging any individual, or otherwise discriminating against any individual "because of such individual's race, color, sex or national origin." 42 U.S.C. §§ 2000e(a) and 2000e–2(a)(1). *See Armstrong v. Index Journal*, 647 F.2d 441, 448 n. 3 (4th Cir.1981). Maher alleges that he

**1452**

was terminated in part as a reprisal for his February 22, 1983 "Report of Hazard, Unsafe Condition or Practice." This safety report contained no allegation relating to gender or any other factor to which Title VII applies.

Where a plaintiff alleges retaliation only for practices not cognizable under Title VII, the action must be dismissed. *See King v. Seaboard Coast Line Railroad,* 538 F.2d 581, 583 (4th Cir.1976); *Graham v. Texasgulf,* 662 F.Supp. 1451, 1462 (D.Conn.1987), *aff'd,* 842 F.2d 1287 (2d Cir. 1988). However, in this case, Maher claims that he was terminated in reprisal for two of his complaints: (1) a gender discrimination complaint against Wynne, and (2) the hazard report. Maher's entire complaint should not be dismissed. Instead, the court strikes only that portion of the complaint which alleges retaliation for the hazard report.

*Claims Against Postal Service and Wynne*

■ The Postal Service and Wynne argue that there is no subject matter jurisdiction over the claims against them, relying on the provision in § 717(c) that "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e–16(c). The Postmaster General is the only proper defendant in a § 717 case brought by a postal employee. *Rys v. U.S. Postal Service,* 886 F.2d 443, 444 (1st Cir.1989); *Morgan v. U.S. Postal Service,* 798 F.2d 1162, 1165 n. 3 (8th Cir. 1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *Stewart v. U.S. Postal Service,* 649 F.Supp. 1531, 1533 (S.D.N.Y.1986).

The claims against the Postal Service and Wynne are dismissed. The decision in *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), relied on by plaintiff on this issue, does not provide a basis for varying from the clear terms of § 717(c).

## CONCLUSION

The motion to dismiss the entire case for failure to exhaust administrative remedies is denied. The case will go to trial as to defendant Postmaster General, except for the claim of retaliation arising from the hazard report, which is stricken. The claims against the Postal Service and Wynne are dismissed because they are not properly joined as defendants.

SO ORDERED.