**Ruth M. HALASI–SCHMICK, Plaintiff,**

v.

**The CITY OF SHAWNEE, KANSAS, James R. Farthing, and Jeffrey L. Hudson, Defendants.**

**Civ. A. No. 90–4045–S.**

United States District Court, D. Kansas.

March 14, 1991.

---

748

Les E. Diehl, Goodell, Stratton, Edmonds & Palmer, Topeka, Kan., for plaintiff.

Suzanne S. Burson, Marvin E. Rainey, Marvin E. Rainey & Associates, Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion for summary judgment, or in the alternative, for partial summary judgment. In this action, pursuant to Title VII, 42 U.S.C. §§ 1983, 1985, and 1988 and the first and fourteenth amendments, plaintiff, a white female formerly employed as a fire inspector/code enforcement officer with defendant City of Shawnee, claims that she was unlawfully discriminated against in the terms and conditions of her employment and was denied promotion due solely to her gender and that she was otherwise sexually harassed during her employment with defendant city. Because the court finds that oral argument would not be of material assistance in resolving the issues raised in defendants' motion, defendants' request for oral argument will be denied. D.Kan. 206(d).

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of material fact means that the evi-

dence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing an absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

For purposes of defendants' present motion, the court finds that the following facts are not genuinely controverted by the parties. The City of Shawnee, Kansas is a city organized under the laws of the state of Kansas. Plaintiff, a white female, was hired by the City of Shawnee on June 13, 1988 for the position of fire inspector/code enforcement officer. Plaintiff was so employed when the present suit was filed; she was terminated from her employment on August 29, 1990. Defendant James R. Farthing ("Farthing"), who was terminated in September of 1990, was at times relevant to this lawsuit, Fire Chief of the City of Shawnee Fire Department and a supervisor of plaintiff. Defendant Jeffrey L. Hudson ("Hudson") was at all times relevant to this suit an employee of the City of Shawnee Fire Department and a supervisor of the plaintiff.

█ With respect to defendants' contention that plaintiff is not entitled to pursue her Title VII claims because of her failure to exhaust administrative remedies, the court finds that the following facts are uncontroverted. On April 11, 1989, plaintiff filed charge no. 10657–89 against the City of Shawnee Fire Department and its representatives with the Kansas Commission on Civil Rights ("KCCR") alleging that from June 13, 1988 and continuing to at least March 3, 1989, she had been subjected to derogatory comments and that respondents had denied her the opportunity to attend various training classes and meetings because she was female and as an act of retaliation. The KCCR charge no. 10657–89 was subsequently referred to the Equal Employment Opportunity Commission ("EEOC") as a discrimination charge under Title VII and assigned charge no. 28D890517. KCCR records reflect that after plaintiff filed charge no. 10657–89, the KCCR assigned an investigator to the case. After responding to plaintiff's charge no. 10657–89, counsel for respondents City of Shawnee Fire Department and its representatives received notification from the KCCR that plaintiff's charge had been scheduled for an initial investigative conference to be held on June 27, 1989. Plaintiff was also advised of the June 27, 1989 meeting. On June 23, 1989, plaintiff's counsel notified the KCCR, in writing, that plaintiff would not participate in the June 27, 1989 investigative conference. On June 26, 1989, respondents' counsel was advised by the KCCR that the conference had been canceled due to the notification from plaintiff's counsel that plaintiff would not appear or participate in the investigative conference. After being informed that the conference had been canceled, respondents' counsel received no further communication from the KCCR regarding investigation of plaintiff's charge no. 10657–89. On December 1, 1989, the EEOC issued a notice of right to sue to plaintiff.

In their reply, defendants do not controvert plaintiff's "statement of additional uncontroverted facts," relevant to defendants' exhaustion argument. As stated in plaintiff's response and supported by exhibits, on June 22, 1989, plaintiff's counsel was informed by a KCCR employee, Kathy

Sterling, that plaintiff was not required to attend the preliminary investigation conference, that the procedure was optional, and that if either party elected not to participate, no conference would be held. Plaintiff's attorney confirmed this by letter dated June 23, 1989, and requested that a field investigator be appointed in lieu of the conference. It is similarly uncontroverted that the KCCR file contained a memorandum relating the substance of a similar conversation between Ms. Sterling and respondents' counsel.

Defendants contend that plaintiff's Title VII claims should be dismissed for failure to exhaust her administrative remedies. Specifically, defendants contend that plaintiff's failure to attend an initial or preliminary investigative conference scheduled for June 27, 1989, essentially constituted a deliberate bypass on plaintiff's part of the KCC's investigatory and conciliatory procedures. Thus, defendants contend that plaintiff's Title VII claims should be dismissed for failure to exhaust administrative remedies, citing several cases, chiefly, *Moteles v. University of Pennsylvania,* 730 F.2d 913, 916–17 (3d Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984).

Upon review of defendants' motion, and plaintiff's response thereto, the court finds that defendants' motion for summary judgment on exhaustion grounds should be denied. As plaintiff points out, defendant does not argue that recognized jurisdictional prerequisites for bringing a federal action under Title VII have not been satisfied in this case. These prerequisites, *i.e.*, timely filing of a discrimination charge with the EEOC and receiving and acting upon a statutory notice of the right to sue, *McDonnell Douglas v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973), have been met. Further, the court finds that defendant has not controverted the arguments and supporting documents produced by plaintiff in her response to the effect that the preliminary investigation conference which plaintiff did not attend is an optional, rather than mandatory, procedure offered by the KCCR. Thus, the court finds that plaintiff's failure

to utilize this procedure does not on its face constitute the kind of "deliberate bypass" or "thwarting" of administrative proceedings discussed in the authorities cited by defendants, including *Moteles.* Therefore, defendants' motion for summary judgment on grounds that plaintiff has failed to exhaust administrative remedies will be denied. *See Maher v. United States Postal Serv.,* 729 F.Supp. 1444, 1451 (S.D.N.Y. 1990) (plaintiff's failure to attend an optional hearing did not bar his civil rights action under § 717 of Title VII).

■ In the alternative, defendants seek summary judgment as to plaintiff's sexual harassment claim. With regard to this claim, the court finds that the following facts are not genuinely controverted. The only offensive comment allegedly made by defendant Farthing to plaintiff was referring to her as a "dumb blonde." The only offensive comment allegedly made by defendant Hudson was made to another employee of the Fire Department, Mike Whim, that plaintiff and another co-worker, Kevin Vining, were having an affair. Plaintiff relayed this comment to Vining who also found it offensive. The only comment allegedly made by any other employees of the City of Shawnee which plaintiff found offensive was a comment made by the City Manager, Gary Montague, to another employee, Debra Howell, that plaintiff was a bitter woman. Prior to the City Manager's comment allegedly being made, plaintiff had had a meeting with the City Manager at which time plaintiff was dissatisfied with City of Shawnee Fire Chief Farthing. If the City Manager had called plaintiff a "bitter person," plaintiff would also have been offended.

In the pretrial order, plaintiff alleges that not only was she subjected to allegedly sexist comments as set forth above, but that nine other females were sexually harassed while employed by the City of Shawnee. Plaintiff did not personally see or hear any acts or comments of a sexually harassing nature being made to any of these nine females. Only one of these women worked in the same department as plaintiff, *i.e.*, Sherry Schultz who worked in

the department for 3–4 months in late 1989 to January 1990. Plaintiff's job performance remained excellent until she was terminated in August 1990.

Although she did not include these additional facts in the pretrial order as facts supporting her sexual harassment claim, in her response plaintiff alleges that she was subjected on various occasions to differential treatment because of her gender. These allegations include not being allowed to attend training seminars, being disciplined for accompanying Deputy Fire Chief Ron Graham on a fire investigation at Graham's request, having to have her boots inspected by Graham before plaintiff could be issued a new pair, defendant Farthing removing police protection from plaintiff while she was doing criminal arson investigations, occasionally being required to do secretarial work while the secretary was out, differential disciplinary treatment, requests made by male counterparts were acted upon more quickly than were similar requests made by plaintiff, remarks made by defendants regarding plaintiff's professional competence, denial by defendants of maternity leave, defendants unilaterally altering a juvenile program initiated by plaintiff, and defendants delaying plaintiff's uniform component requests. Deputy Chief Graham, whose deposition testimony is used to support several of these allegations, also testified in his deposition that he believed plaintiff was treated differently than other paid firefighters for the City of Shawnee, but not because of her sex.

In this motion, defendants seek partial summary judgment with regard to plaintiff's sexual harassment claim. Plaintiff's allegations are of the "hostile work environment" type of sexual harassment claim. As stated by the Tenth Circuit Court of Appeals in *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir.1987), "hostile work environment harassment arises when sexual conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), quoting 29 C.F.R. 1604.-11(a)(3)). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Ramsey v. City and County of Denver*, 907 F.2d 1004, 1011 (10th Cir.1990) (quoting *Vinson*, 477 U.S. at 67, 106 S.Ct. at 2405, quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)); *Hicks*, 833 F.2d at 1414. "Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances." *Hicks*, 833 F.2d at 1414 (citing *Henson*, 682 F.2d at 904).

The elements of a *prima facie* hostile work environment claim have been stated as follows:

(1) The employee belongs to a protected group;

(2) The employee was subject to unwelcome sexual harassment;

(3) The harassment complained of was based upon sex;

(4) The harassment complained of affected a 'term, condition, or privilege' of employment; and

(5) existence of respondeat superior liability.

*Henson*, 682 F.2d at 903–05.

Further, the complained-of conduct must be persistent and routine rather than isolated or sporadic in nature. *See Downes v. Federal Aviation Admin.*, 775 F.2d 288, 293 (Fed.Cir.1985) (citing 110 Cong.Rec. 14,270 (1964)). The conduct need not, however, be "clearly sexual in nature;" rather, it is sufficient if the conduct amounts to unequal treatment which, but for plaintiff's sex, would not have occurred. *Hicks*, 833 F.2d at 1415 (citing *McKinney v. Dole*, 765 F.2d 1129, 1138–39 (D.C.Cir.1985)).

In their motion, defendants contend that the three separate incidents of allegedly offensive verbal conduct directed toward plaintiff from June 1988 to March 1989 are not sufficiently severe or pervasive to alter the conditions of plaintiff's employment, and thus, support a hostile work environ-

ment claim. Defendants argue that the facts of this case are analogous to *Downes*, 775 F.2d at 293–95, in which the court held that four separate incidents of sexual harassment were insufficient to support a Title VII claim.[1] Defendants further contend that plaintiff cannot rely on hearsay comments about her allegedly having an affair or being a "bitter woman," or about incidents allegedly directed at the nine other female employees, to withstand summary judgment, citing *Dean v. Taco Tico, Inc.*, No. 85–4167–R, slip op. at 3, 1990 WL 78546 (D.Kan., *unpublished*, May 11, 1990) (1990 U.S. Dist. LEXIS 6824) (citing *Miller v. Solem*, 728 F.2d 1020, 1026 (8th Cir.), *cert. denied*, 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984)). Defendant further argues that these comments were not made "because of plaintiff's sex," and that, in any event, the conduct complained of did not apparently affect plaintiff's job performance, which remained "excellent" until she was terminated in August of 1990.

In her response to defendants' motion, plaintiff relies largely upon statements contained in her additional statement of facts, some of which stem from the deposition testimony of Deputy Chief Ron Graham. Plaintiff also cites the comments about her being a "dumb blonde," and a "bitter woman," as well as the rumor about her alleged affair. In her deposition, plaintiff stated that these comments "affected her attitude toward work and made her feel that she wasn't respected and wasn't going to get anywhere while these people were her superiors." Plaintiff's Response, at 36. In support of her argument that her hostile work environment claim meets the *Hicks* standard, plaintiff also cites her deposition

testimony about other allegedly sexually harassing incidents directed at nine other female employees of the City of Shawnee.

As an initial matter, the court finds that plaintiff cannot rely on hearsay about incidents involving the nine other female employees of the City of Shawnee in opposing defendants' summary judgment motion on this claim. *Dean*, slip op. at 3. Assuming that the comments about plaintiff's alleged affair and her being a "bitter woman," are admissible as exceptions to the hearsay rule, for example, as admissions, the court does not find that either comment provides much support for her claim because they cannot be simply categorized as made "because of her sex." *Henson*, 682 F.2d at 904.[2] The court further finds that the deposition testimony of Ron Graham, upon which plaintiff relies, does not fully support her claim that the other unequal treatment to which she was subjected was because of her sex given Graham's statement that, in his opinion, any differential treatment was not because of plaintiff's sex. Finally, the court finds that plaintiff's deviation from the pretrial order in her response to assert additional facts in support of this claim is also somewhat questionable. *See Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 817 (10th Cir. 1979) (stating that a pretrial order represents a "complete statement of all the contentions of the parties") (citation omitted).

Even if all of plaintiff's allegations in support of her hostile work environment sexual harassment claim are considered, the court does not find that the conduct alleged meets the *Hicks* standard of being sufficiently pervasive and severe to alter

---

1. The incidents found in *Downes* to be insufficient to support a hostile work environment sexual harassment claim included referring to a female employee (a "Ms. Jones") as the "Dolly Parton" of the office in a conversation with two visitors to the facility which the female employee overheard, speculating with regard to the frequency of a female employee's sexual relationships after her divorce in a telephone conversation, describing a woman (non-employee) who wore tight shorts and relating a joke from Bob Hope regarding such attire, and touching Jones' hair on two occasions. 775 F.2d at 293–95.

2. "In proving a claim for hostile work environment due to sexual harassment ... the plaintiff must show that but for the fact of her sex, she would not have been the object of harassment." *Henson*, 682 F.2d at 904. As the *Henson* court explained, if the conduct complained of is equally offensive to, or directed at both, men and women, then there is no Title VII remedy because both female and male employees are accorded the same (albeit offensive) treatment. *Id.* In this case for example, the rumor about plaintiff's alleged affair was directed at, and offensive to, both plaintiff and the male employee involved, Kevin Vining.

the conditions of her employment with the City of Shawnee. Upon considering the totality of the circumstances as presented to the court in connection with this motion, and the case law directed at this issue, the court finds that the conduct alleged by plaintiff is more in the nature of the conduct held not to be actionable in *Downes*, 775 F.2d at 293, than the conduct for which a Title VII hostile work environment claim was allowed in *Henson*.[3] Thus, the court finds that defendants' motion for summary judgment on plaintiff's sexual harassment claim should be granted.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for summary judgment on all of plaintiff's claims for failure to exhaust administrative remedies is denied; defendants' alternative motion for partial summary judgment with regard to plaintiff's sexual harassment claim is, however, granted.

---

**3.** In *Henson*, the court found that the plaintiff, a female police dispatcher, had made a *prima facie* showing in connection with her hostile work environment claim where she and a female co-worker were subjected by the police chief to "numerous harangues of demeaning sexual inquiries and vulgarities" throughout the course of the two years she worked there and where the police chief made requests of both plaintiff and her co-worker that they have sexual relations with him. 682 F.2d at 903-05. That the hostile work environment claim is subject to a fairly high standard of proof is illustrated by a case in this circuit, upheld on appeal, *Ebert v. Lamar Truck Plaza*, 715 F.Supp. 1496, 1499 (D.Colo.1987), *aff'd*, 878 F.2d 338 (10th Cir. 1989), in which male employees' actions consisting of vulgarities, offensive gesturing and touching female employees' breasts or buttocks were held to be insufficient to demonstrate the existence of a hostile working environment.